#29338-a-MES
**2022 S.D. 59**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

U.S. BANK NATIONAL ASSOCIATION,                Appellant,

   v.

SOUTH DAKOTA DEPARTMENT OF
REVENUE,                                                        Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE BOBBI J. RANK
Judge

\* \* \* \*

CRAIG B. FIELDS
NICOLE L. JOHNSON of
Blank Rome LLP
New York, New York

JUSTIN L. BELL of
May, Adam, Gerdes & Thompson LLP
Pierre, South Dakota                                Attorneys for appellant.


JOHN T. RICHTER of
South Dakota Department of Revenue
Pierre, South Dakota                                Attorneys for appellee.

\* \* \* \*

ARGUED
FEBRUARY 16, 2021
OPINION FILED **10/05/22**

#29338

SALTER, Justice

[¶1.]    The South Dakota Department of Revenue (the Department) rejected

U.S. Bank's[1] method of calculating its federal income tax deduction from net income

subject to South Dakota's bank franchise tax for tax years 2010, 2011, and 2012.  As

a result, the Department denied U.S. Bank's request for a refund for 2010 and 2011

and disallowed the entire deduction for 2012.  The Department issued a certificate

of assessment for additional tax and interest for 2012.  U.S. Bank appealed the

administrative decision to the circuit court, which affirmed the Department's

decision.  U.S. Bank now appeals to this Court.  We affirm.

**Facts and Procedural History**

[¶2.]    U.S. Bank is a financial institution principally engaged in the business

of banking.  It operates in South Dakota and other states and is a member of a

larger, consolidated group of affiliates owned by U.S. Bancorp, which is a publicly

traded holding company.

[¶3.]    By virtue of its business within the State, U.S. Bank is subject to

South Dakota's bank franchise tax (SD BFT).  *See* SDCL ch. 10-43.  The tax is

applied to a financial institution's "taxable income as defined in the United States

Internal Revenue Code . . . and reportable for federal income tax purposes for the

taxable year . . . ."  SDCL 10-43-10.1; *see also* SDCL 10-43-1(12) (defining taxable

income as "all net income").

[¶4.]    U.S. Bank does not, itself, directly report its income to the Internal

Revenue Service (IRS).  Instead, U.S. Bancorp, in its role as the parent company, is

---

1.    U.S. Bank is formally known as U.S. Bank National Association.

responsible for filing a consolidated federal corporate income tax return for the group of affiliates using an IRS Form 1120—U.S. Corporation Income Tax Return. For the tax years at issue here, U.S. Bancorp filed the group's Form 1120, which included U.S. Bank's activities.

[¶5.]      Schedule J of IRS Form 1120, entitled "Tax Computation," provides the method used to calculate the total federal tax due. The calculation on Schedule J begins by multiplying taxable income by the appropriate tax rate to arrive at the federal income tax amount listed on line 2 of Schedule J. That number is then reduced by any number of applicable tax credits, which include, among others, general business credits, recapture of investment credit, and credit for foreign taxes. After applying all of a taxpayer's credits to reduce its tax liability, the total tax figure is recorded on line 11 of Schedule J and then transferred to the Form 1120. The total tax due is, therefore, a net calculation of federal tax liability that must be paid to the IRS. The excerpt of Form 1120's Schedule J below illustrates the sequence of the calculation.

Form 1120 (2012)                                                                      **Page 3**

**Schedule J**   **Tax Computation and Payment** (see instructions)

**Part I–Tax Computation**

| | | | |
|---|---|---|---|
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)) . . . . ▶ ☐ | | |
| 2 | Income tax. Check if a qualified personal service corporation (see instructions) . . . . . . . . ▶ ☐ | 2 | |
| 3 | Alternative minimum tax (attach Form 4626) . . . . . . . . . . . . . . . . . . . . | 3 | |
| 4 | Add lines 2 and 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | |
| 5a | Foreign tax credit (attach Form 1118) . . . . . . . . . . . . . | 5a | |
| b | Credit from Form 8834, line 30 (attach Form 8834) . . . . . . . . | 5b | |
| c | General business credit (attach Form 3800) . . . . . . . . . | 5c | |
| d | Credit for prior year minimum tax (attach Form 8827) . . . . . . . | 5d | |
| e | Bond credits from Form 8912 . . . . . . . . . . . . . . | 5e | |
| 6 | **Total credits.** Add lines 5a through 5e . . . . . . . . . . . . . . . . | 6 | |
| 7 | Subtract line 6 from line 4 . . . . . . . . . . . . . . . . . . . . . . . | 7 | |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) . . . . . . . . . . . . | 8 | |
| 9a | Recapture of investment credit (attach Form 4255) . . . . . . . . | 9a | |
| b | Recapture of low-income housing credit (attach Form 8611) . . . . . . . | 9b | |
| c | Interest due under the look-back method—completed long-term contracts (attach Form 8697) . . . . . . . . . . . . . . . . . . . . . | 9c | |
| d | Interest due under the look-back method—income forecast method (attach Form 8866) . . . . . . . . . . . . . . . . . . . . . . | 9d | |
| e | Alternative tax on qualifying shipping activities (attach Form 8902) . . . . . | 9e | |
| f | Other (see instructions—attach statement) . . . . . . . . . . | 9f | |
| 10 | **Total.** Add lines 9a through 9f . . . . . . . . . . . . . . . . . . . . . | 10 | |
| 11 | **Total tax.** Add lines 7, 8, and 10. Enter here and on page 1, line 31 . . . . . . . . . | 11 | |

-2-

[¶6.]　　　　U.S. Bank, the other affiliates, and U.S. Bancorp are parties to a Tax Sharing Agreement designed to allocate the federal tax liability or benefit among the members of the group according to the income or loss each generates.  Under the Tax Sharing Agreement, U.S. Bank pays to U.S. Bancorp "an amount up to [U.S. Bank's] separate income tax liability attributable to the net taxable income of [U.S. Bank] that would have been paid if [U.S. Bank] had filed a separate tax return." According to U.S. Bank, each member of the consolidated group computes its federal taxable income, which is the amount before credits, and multiplies it by the federal tax rate of 35%.  If the member incurs a loss, the member receives a refund of that tax benefit to the extent the loss is used in determining the consolidated taxable income.  Members also receive refunds or cash payments for the credits they generate.  A U.S. Bancorp executive explained that "payments are made back and forth so that each company is theoretically made whole either for the benefit that is generated for the group or for the tax it had to pay for the group."

[¶7.]　　　　At issue in this appeal are the tax years 2010, 2011, and 2012.  The total federal income tax for U.S. Bancorp (Schedule J, line 2) for these years was:

| Tax Year Ended | Total Income Tax Due |
| --- | --- |
| December 31, 2010 | $1,142,253,649 |
| December 31, 2011 | $1,248,535,908 |
| December 31, 2012 | $1,985,176,947 |

[¶8.]　　　　However, the application of certain tax credits reduced the total tax liability due to the IRS for the U.S. Bancorp group (Schedule J, line 11) as follows:

| Tax Year Ended | Total Tax Liability |
| --- | --- |
| December 31, 2010 | $524,920,206 |
| December 31, 2011 | $617,186,234 |
| December 31, 2012 | $981,865,059 |

[¶9.] Because U.S. Bank's activities are included in U.S. Bancorp's consolidated Form 1120, U.S. Bank does not file a separate Form 1120 with the IRS. It does, however, prepare a "pro forma"[2] Form 1120 (the pro forma 1120) to use in connection with reporting its taxable income subject to the SD BFT. The pro forma 1120 is not signed or filed with the IRS. It purports to show what U.S. Bank's federal taxable income would be, before applying tax credits, if it was operating as a single entity and not part of U.S. Bancorp.

[¶10.] According to the pro forma 1120, U.S. Bank's federal taxable income for tax years 2010, 2011, and 2012 accounted for the majority of U.S. Bancorp's taxable income:

| Tax Year Ended | U.S. Bank Fed. Taxable Inc. | U.S. Bancorp Fed. Taxable Income | % |
| --- | --- | --- | --- |
| Dec. 31, 2010 | $2,400,896,642 | $3,263,581,855 | 74% |
| Dec. 31, 2011 | $2,342,731,149 | $3,567,245,451 | 66% |
| Dec. 31, 2012 | $4,925,219,278 | $5,671,934,133 | 87% |

[¶11.] Critical to our consideration of this appeal is a deduction allowed to SD BFT taxpayers for the amount of their federal taxes. For purposes of calculating its SD BFT liability, the statute in effect at the time allowed U.S. Bank to subtract from its taxable income the "taxes imposed upon the financial institution within the tax year, under the Internal Revenue Code . . . ." SDCL 10-43-10.3(3).[3] However, the way U.S. Bank has calculated this deduction has varied over the years.

---

2. As used here, "pro forma" means as a matter of form.

3. The Legislature made extensive revisions to SDCL chapter 10-43 in 2016. *See* 2016 S.D. Sess. Laws ch. 62. For consistency with the record here, we cite to pre-2016 provisions. The federal tax at issue in this case remains a part of SDCL 10-43-10.3, but it is now included in a different subsection, SDCL 10-43-10.3(2). *See* 2016 S.D. Sess. Laws ch. 62, § 6.

#29338

[¶12.] From 2005 to 2007, U.S. Bank calculated the deduction for federal "taxes imposed" by multiplying its federal taxable income by the applicable 35% federal income tax rate. But from 2008 to 2011, U.S. Bank changed the way it calculated the deduction by "taking separate income of U.S. Bank, as a ratio over the total positive taxable income of the consolidated group, and that ratio was multiplied by total federal tax after credits."

[¶13.] Using this latter method, U.S. Bank timely filed its tax year 2010 and 2011 SD BFT returns, attaching to each return a copy of its pro forma 1120 for that tax year. U.S. Bank did not, however, include a copy of the U.S. Bancorp consolidated Form 1120.

[¶14.] At some point after submitting the original 2010 and 2011 SD BFT returns, U.S. Bank realized the discrepancy between how its pre-2008 and post-2008 federal income tax deduction had been calculated on its SD BFT returns. As a result, U.S. Bank decided to go back to calculating the deduction in the same way it had for tax years 2005 to 2007, which meant multiplying its separate federal taxable income by 35%. U.S. Bank amended its 2010 and 2011 SD BFT returns,[4] and filed its 2012 SD BFT return, using this methodology.

[¶15.] The amended 2010 and 2011 SD BFT returns substantially increased U.S. Bank's federal income tax deduction from the original returns. The deduction for 2010 went from $317,843,634 to $862,815,157, and the 2011 deduction increased from $346,485,702 to $819,955,902. The larger deductions resulted in lower taxable income for U.S. Bank and substantially reduced its SD BFT liability for both years.

---

4. Tax years 2008 and 2009 were outside the statute of limitations.

[¶16.] Calculating the deduction in this way also appeared to increase U.S. Bank's SD BFT deduction for federal "taxes imposed" to an amount greater than the total federal tax liability of the entire U.S. Bancorp group. As eventually revealed in its consolidated Form 1120, U.S. Bancorp's total federal tax liability for 2010 was $534,594,245. U.S. Bank's initial SD BFT deduction of $317,843,634 represented about 61% of this total. However, after U.S. Bank recalculated its federal tax deduction by simply multiplying its income by the 35% tax rate, its SD BFT deduction represented 161% of the total U.S. Bancorp tax liability.

[¶17.] The amended return for 2011 had a similar impact. U.S. Bank's $346,485,702 deduction reflected on U.S. Bank's original 2011 SD BFT return was about 56% of U.S. Bancorp's total federal tax liability of $617,186,234. However, the amended 2011 SD BFT return applied a $819,955,902 deduction, which represented about 133% of the total tax liability of the consolidated group.

[¶18.] As indicated, U.S. Bank's 2012 SD BFT return used the same methodology as the amended 2010 and 2011 returns (separate taxable income multiplied by 35%). The 2012 SD BFT return included a copy of the 2012 pro forma 1120 but did not include a copy of the 2012 U.S. Bancorp Form 1120. On the 2012 SD BFT return, U.S. Bank claimed a federal income tax deduction of $1,723,826,747. The 2012 U.S. Bancorp Form 1120, subsequently received by the Department, showed a total consolidated federal tax liability of $981,865,059. The $1,723,826,747 deduction claimed on the 2012 SD BFT return was more than 175% of U.S. Bancorp's total tax liability.

[¶19.] U.S. Bank's decision to change the method by which it calculated its federal tax deduction on its SD BFT return prompted several requests for documentation by the Department in 2013, and ultimately the Department undertook an audit in 2014.[5] In December 2014, the Department issued a Notice of Proposed Adjustment #1 (NOPA) in which it disapproved of U.S. Bank's methodology for calculating the federal "tax imposed" deduction. U.S. Bank submitted a response to the NOPA, claiming SDCL 10-43-10.3(3) was ambiguous and that U.S. Bank should be able to use the "separate company" method of multiplying its federal taxable income by 35%. U.S. Bank provided no proof of payment of the 35% amount or other internal work papers to support the amount beyond the U.S. Bancorp Form 1120 and pro forma 1120. Neither of those forms show a computation of the net federal tax attributable to U.S. Bank after applying tax credits.

[¶20.] The Department interpreted SDCL 10-43-10.3(3) to allow a deduction for the federal tax liability a bank actually pays. Applying this standard, the Department could not reconcile the amount reported on U.S. Bank's SD BFT returns to the federal taxes for which the consolidated U.S. Bancorp group was liable. According to the auditor, U.S. Bank's methodology did not make sense because "it was clear . . . that [it] wouldn't get a deduction of $2 if the total [federal] assessment was only 50 cents."

---

5. The 2010 amended return described above was actually a second amended return that followed the Department's request for information.

[¶21.] The Department's auditor acknowledged that U.S. Bank should be allowed a deduction in some amount to reflect the federal taxes it paid. However, U.S. Bank had not furnished the Department with the information reflecting the amount of money transferred by U.S. Bank to U.S. Bancorp to pay U.S. Bank's federal taxes. This amount, the auditor stated, could have been used as a starting point to calculate U.S. Bank's SD BFT deduction.

[¶22.] In December 2015, the Department completed its audit. Based upon its findings, the Department disallowed in full the federal income tax deduction claimed by U.S. Bank for 2012. This resulted in a deficiency of $364,169. On December 28, 2015, the Department issued a Certificate of Assessment for the deficiency amount plus $144,757.11 in interest, for a total of $508,926.11.

[¶23.] Given its stated interpretation of SDCL 10-43-10.3(3), the Department also believed that US Bank's amended 2010 and 2011 SD BFT returns understated its SD BFT liability based on the enlarged federal income tax deduction. Therefore, the Department denied U.S. Bank's refund request.[6]

[¶24.] On February 24, 2016, U.S. Bank protested the Certificate of Assessment for 2012 and denial of its refund claims for 2010 and 2011 and requested a hearing. *See* SDCL 10-59-9 ("Any taxpayer against whom a certificate of assessment is issued may in writing request a hearing before the secretary if the

---

6. The Department's audit report stated that U.S. Bank's method used to calculate the federal tax deduction in the original 2010 and 2011 SD BFT returns "could approximately be accurate[.]" However, without additional documentation confirming the amount of federal taxes U.S. Bank paid, the auditor stopped short of endorsing the original deduction amounts. And, in any event, the Department was time barred from assessing additional SD BFT amounts for those years.

taxpayer believes that the assessment is based upon a mistake of fact or an error of law."). In a letter submitted to the Department, U.S. Bank argued that there was no South Dakota law or guidance regarding the proper method to calculate SDCL 10-43-10.3(3)'s federal "taxes imposed" deduction. It argued the statute was ambiguous and should be construed liberally in its favor.

[¶25.]      Following an administrative hearing, the hearing examiner issued a proposed decision, recommending that the Department's Certificate of Assessment for 2012 and its denial of refund requests for 2010 and 2011 be affirmed in all respects. The Secretary of Revenue agreed with the hearing examiner's proposed disposition, but issued a final decision modifying several of the hearing examiner's findings of fact and conclusions of law. *See* SDCL 1-26D-8 (authorizing a reviewing agency to reject or modify a hearing examiner's recommendations).

[¶26.]      U.S. Bank appealed to the circuit court, which affirmed the Department's final decision. In its effort to construe the federal "taxes imposed" text of SDCL 10-43-10.3(3)'s SD BFT deduction, the court noted that dictionary definitions of "impose" did not provide sufficient clarity for a conclusive plain reading. The court examined the overall statutory framework for the bank franchise tax and observed that the Legislature had expressly referred to the "*deductibility of net federal income taxes*" when it granted the Secretary of Revenue rule-making authority. SDCL 10-43-42.1(3) (emphasis added).

[¶27.]      In the circuit court's view, "taxes imposed" meant taxes paid or an accrual-method taxpayer's tax liability. The precise amount of the federal tax deduction from net income for the SD BFT was a product of calculating tax liability

pursuant to the method set out in Schedule J of Form 1120. However, U.S. Bank's pro forma 1120 only included its total federal tax amount. Missing was the application of credits allowed by the IRS to directly reduce the amount of taxes owed. These include business-related credits, which are implicated in this case. Though less significant to the calculation of the deduction in this case, the court also noted that Schedule J of Form 1120 authorizes reductions from the total tax owed for foreign taxes paid by the corporation.

[¶28.] In the end, the circuit court was unwilling to accept the idea that the Legislature had, by its "taxes imposed" language, intended to allow SD BFT taxpayers to increase their federal tax deduction, thereby decreasing their SD BFT taxable income, by failing to account for federal tax reductions obtained through tax credits. The court concluded, as the hearing examiner and the Department had, that doing so has the incongruous effect of creating a SD BFT deduction for U.S. Bank that significantly exceeds the total tax liability for the entire U.S. Bancorp group of affiliates.

[¶29.] U.S. Bank now appeals the circuit court's decision affirming the Department's determination, arguing that the court erred by interpreting "taxes imposed" to mean taxes paid or tax liability.

### Standard of Review

[¶30.] When this Court reviews a decision from an administrative agency, "we examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence." *Pirmantgen v. Roberts Cnty.*, 2021 S.D. 5, ¶ 20, 954 N.W.2d 718, 724 (quoting *Clarkson and Co. v.*

*Harding Cnty.*, 1998 S.D. 74, ¶ 5, 581 N.W.2d 499, 501, *superseded by statute on other grounds*, SDCL 10-3-16); *see also* SDCL 1-26-36. "When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable." *Pirmantgen*, 2021 S.D. 5, ¶ 20, 954 N.W.2d at 724 (quoting *Butte Cnty. v. Vallery*, 1999 S.D. 142, ¶ 8, 602 N.W.2d 284, 287). We have also held that "[t]he interpretation and application of a tax statute is a question of law that we review de novo." *Citibank, N.A. v. South Dakota Dep't of Revenue*, 2015 S.D. 67, ¶ 7, 868 N.W.2d 381, 385 (quoting *Rushmore Shadows, LLC v. Pennington Cnty. Bd. of Equalization*, 2013 S.D. 73, ¶ 7, 838 N.W.2d 814, 816).

## Analysis and Decision

### *The Bank Franchise Tax and the deduction for federal "taxes imposed"*

[¶31.] Financial institutions doing business in South Dakota are subject to bank franchise taxes pursuant to SDCL chapter 10-43. The Department is responsible for administering the chapter and, as indicated above, is authorized to promulgate rules on a variety of topics, including "[t]he definition and deductibility of net federal income taxes[.]" SDCL 10-43-42.1(3).

[¶32.] As it relates to the tax years at issue here, SDCL 10-43-2.1 provided that "[a]n annual tax is . . . imposed upon every national banking corporation . . . doing business within [South Dakota], according to or measured by its net income, to be computed in the manner provided in this chapter, on the basis of its net income during any part of its tax year."[7] "Net income, in the case of a financial

---

7. The Legislature has since repealed SDCL 10-43-2.1. *See* 2016 S.D. Sess. Laws ch. 62, §§ 3, 32. Nationally chartered banks, however, remain subject

(continued . . .)

institution, is taxable income as defined in the United States Internal Revenue Code . . . and reportable for federal income tax purposes for the taxable year, but *subject to the adjustments as provided in §§ 10-43-10.2 and 10-43-10.3.*" SDCL 10-43-10.1 (emphasis added).[8]

[¶33.] The provisions of SDCL 10-43-10.1, therefore, contemplate further "adjustments" to the taxable income reportable to the IRS under the authority of SDCL 10-43-10.2 and SDCL 10-43-10.3. The adjustments take the form of additions to taxable income authorized by SDCL 10-43-10.2 and deductions that are subtracted from taxable income pursuant to SDCL 10-43-10.3. Additions to U.S. Bank's taxable income are not at issue in this appeal, which instead implicates a particular deduction allowed by SDCL 10-43-10.3(3):

> Subtracted from taxable income are:
>> . . .
>
> (3) *Taxes imposed* upon the financial institution within the tax year, under the Internal Revenue Code . . . .

(Emphasis added.)

[¶34.] Though the phrase "taxes imposed" is not defined in chapter 10-43, the Department has exercised its rule-making authority and promulgated ARSD 64:26:04:28. The administrative rule provides that "[n]et federal income taxes are

---

(. . . continued)
 to SD BFT under the provisions of SDCL 10-43-2, which applies the tax to financial institutions that are defined, in part, as "banking institution[s] . . . organized under the laws of the United States and doing business in [South Dakota.]" SDCL § 10-43-1(4).

8. The Internal Revenue Code generally defines "taxable income" as "gross income minus the deductions" allowed under federal law. 26 U.S.C. § 63(a).

deductible from taxable income in the year in which they are paid" for taxpayers

using the cash method of accounting and in the "year in which they are incurred"

for accrual method taxpayers, like U.S. Bank. *Id.* For its part, then, the

Department regards "taxes imposed" as the "net federal income taxes" that were

paid by an SD BFT taxpayer.

[¶35.] U.S. Bank reads the "taxes imposed" phrase of SDCL 10-43-10.3

differently, and at the heart of this case lies the correct interpretation of the phrase.

Our familiar rules for reading statutory text are well settled:

> When engaging in statutory interpretation, we give words their
> plain meaning and effect, and read statutes as a whole, as well
> as enactments relating to the same subject. When the language
> in a statute is clear, certain, and unambiguous, there is no
> reason for construction, and this Court's only function is to
> declare the meaning of the statute as clearly expressed.

*Citibank, N.A.*, 2015 S.D. 67, ¶ 12, 868 N.W.2d at 387 (quoting *Paul Nelson Farm v.*

*S.D. Dep't of Revenue*, 2014 S.D. 31, ¶ 10, 847 N.W.2d 550, 554). Additionally,

"words of a statute must be read in their context and with the view to their place in

the overall statutory scheme." *In re Hunt Companies, Inc.*, 2019 S.D. 26, ¶ 24, 927

N.W.2d 894, 900 (citation omitted).

[¶36.] "Statutes that 'impose taxes are to be construed liberally in favor of the

taxpayer and strictly against the taxing body.'" *Citibank, N.A.*, 2015 S.D. 67, ¶ 7,

868 N.W.2d at 385 (quoting *Rushmore Shadows, LLC*, 2013 S.D. 73, ¶ 7, 838

N.W.2d at 816). However, "when we are called on to interpret a statute granting an

exemption, a deduction, or a credit . . . the statute is strictly construed against the

taxpayer." *Burlington N. R.R. Co. v. Strackbein*, 398 N.W.2d 144, 146 (S.D. 1986).

*See also In re State & City Sales Tax Liab. of Quality Serv. Railcar Repair Corp.*,

437 N.W.2d 209, 211 (S.D. 1989) ("[S]tatutes allowing a tax exemption are strictly and narrowly construed in favor of the taxing power and are given a reasonable, natural and practical meaning to effectuate the purpose for which the exemption was granted.").

[¶37.] Simply reading the text does not resolve the question before us—whether "taxes imposed" means total income allocated multiplied by the applicable tax rate, as U.S. Bank argues,[9] or whether instead "taxes imposed" means the amount of taxes paid or compulsory tax liability required by federal law. Standard dictionary definitions could conceivably support either view.[10] *See Jackson v. Canton Place Homeowner's Ass'n, Inc.*, 2007 S.D. 37, ¶ 11, 731 N.W.2d 210, 213 ("We may use . . . dictionary definitions to determine the plain and ordinary meaning of undefined words.").

[¶38.] Looking to the overall statutory scheme in SDCL chapter 10-43 is more illuminating. *See Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.*, 2014 S.D. 64, ¶ 28, 853 N.W.2d 878, 885 ("Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject." (citation omitted)). We begin with the

---

9.   U.S. Bank's implicit argument that the verb "impose" in the taxation context can only refer to the imposition of the tax itself, and not a net calculation of tax, is belied by the Legislature's use of the word in SDCL 10-43-2, which "hereby impose[s]" a tax on financial institutions that applies, as SDCL 10-43-10.1 provides, to *net* income.

10.   U.S. Bank cites to Merriam-Webster's Online Dictionary, which defines "impose" as "to establish or apply by authority-impose a tax" and "to establish or bring about as if by force." Therefore, a plain reading of "taxes imposed" in isolation could mean the application of the tax rate, but it could also mean the compulsory legal obligation to pay it, or perhaps both.

-14-

recognition that the deductions listed in SDCL 10-43-10.3 are part of a legislative effort to allow taxpayers the ability to avoid paying SD BFT on income used to pay federal tax. But amounts that are subtracted to determine a taxpayer's net income should not compromise the soundness of the SD BFT calculation. Therefore, a taxpayer should not expect to subtract a larger amount of federal taxes than it is obligated to pay. To do otherwise would lead to a disproportionately large deduction and irrational results that do not correspond to the amount of federal tax owed by SD BFT taxpayers. The evidence contained in the record illustrates the point.

[¶39.]        U.S. Bank's claimed SD BFT deduction over each of the three years at issue was between 133% and 175% higher than the entire consolidated group's payments to the IRS. Overall, the combined deduction for taxes imposed claimed by U.S. Bank was $1,272,952,268 higher than the combined federal income taxes actually paid by all of the U.S. Bancorp entities over those years. That result, while perhaps beneficial to U.S. Bank, is conspicuously at odds with the Legislature's apparent intent to relieve SD BFT taxpayers from state tax liability for money *already expended* satisfying their federal tax obligation.

[¶40.]        Interpreting "taxes imposed" to mean federal taxes paid or tax liability is also consistent with the similar term "net federal income taxes" used in SDCL 10-43-42.1.[11] The statute, as indicated, delegates to the Secretary of Revenue the authority to promulgate rules concerning the "definition and deductibility of net

---

11.    To the extent that the "taxes imposed" phrase is ambiguous, our interpretation is also consistent with our rule of construction that requires us to construe statutory deductions strictly. *See Strackbein*, 398 N.W.2d at 146.

federal income taxes"—a perceptible reference to the "taxes imposed" deduction of SDCL 10-43-10.3(3).[12]

[¶41.] U.S. Bank's argument that "taxes imposed" means its total tax calculated after multiplying its income by the 35% tax rate rests uneasily upon its claim that using credits to reduce its tax liability is identical to the expenditure of cash to satisfy the tax liability.[13] We have generally described a tax credit as a rebate, but we have never held that its use is the same as an expenditure of money, and there is no basis to support such a conclusion here. *See Burlington N. R.R. Co.*, 398 N.W.2d at 147 ("A tax credit is a rebate and not a tax."). Rather, "tax credits operate as a type of exemption to taxation[.]" *Suozzi v. Tax Appeals Tribunal of*

---

12. U.S. Bank argues that its textual interpretation of "taxes imposed" is strengthened by the express language used for SD BFT deductions involving corporations who have elected Subchapter S treatment under the Internal Revenue Code and for limited liability companies (LLCs). For these taxpayers, SDCL 10-43-10.3 allows a deduction for "imputed federal income taxes in an amount equal to the taxes that would have been paid on net income" if they were a Subchapter C corporation. SDCL 10-43-10.3(10)-(11) (now SDCL 10-43-10.3(6)-(7)). We believe the comparison is not apt and fails to account for the distinct nature of Subchapter S corporations and LLCs. Unlike Subchapter S corporations and LLCs, a Subchapter C corporation's income is taxed as a separate entity, and its shareholders are also taxed for distributions. *Valentino v. Franchise Tax Bd.*, 105 Cal. Rptr. 2d 304, 307 (Cal. Ct. App. 2001). By contrast, Subchapter S corporations are not taxed as separate entities, but their "shareholders are taxed on their pro rata share of the corporation's income, regardless of whether it makes any distributions." *Id.* By allowing a deduction for imputed income that would have been paid, but was never "imposed," the Legislature appears to simply be advancing a policy of allowing the federal tax deduction for all financial institutions, regardless of how they are organized.

13. U.S. Bank's assertion that tax credits are simply a form of payment, like cash, is unaccompanied by legal authority. Instead, U.S. Bank cites to the testimony of one of its executives, but we do not view the opinion of a partisan witness on this point of tax law, standing alone, to be authoritative.

*State*, 116 N.Y.S.3d 778, 781 (N.Y. App. Div. 2020). *See also* Credit, West's Tax Law Dictionary § C4530 ("[A] credit is an allowance against the tax itself.").

[¶42.]      Though the text of SDCL 10-43-10.3(3) could perhaps be clearer, we feel confident that the Legislature did not intend to allow a taxpayer to subtract amounts for federal "taxes imposed" that did not involve the payment of money. And U.S. Bank has failed to demonstrate that the federal tax credits it claimed during the tax years at issue here were equivalent to the expenditure of cash.

[¶43.]      Beyond this, U.S. Bank devotes a substantial portion of its advocacy effort to the claim that the Department and the circuit court were obligated to provide it with more definitive guidance concerning the federal tax deduction. Failing that, U.S. Bank argues, the Department was required to accept U.S. Bank's methodology. We cannot agree. Nor do we perceive any uncertainty about the proper methodology for calculating the deduction, given our holding that "taxes imposed" means taxes paid or the actual amount a taxpayer is obligated to pay. Therefore, we view U.S. Bank's claim in this regard as an extension of its principal argument that "taxes imposed" means its separate income multiplied by the 35% tax rate. Even if the application of the 35% tax rate signals its "imposition," U.S. Bank's total tax liability is no less "imposed" or compelled after being reduced by tax credits.

[¶44.]      We therefore conclude that the "taxes imposed" text of SDCL 10-43-10.3 referred to a deduction from the SD BFT taxable income amount that equals the federal taxes a bank has paid or for which it is liable to pay.

***Deduction Calculation***

[¶45.]     A certificate of assessment is deemed prima facie correct.  SDCL 10-59-8.  The burden is on the taxpayer to overcome the presumption by establishing that there has been a mistake of fact or an error of law.  SDCL 10-59-9.  Generally, a taxpayer has the burden to prove both the entitlement to a deduction and the proper amount.  *Doyal v. Comm'r of Internal Revenue*, 616 F.2d 1191, 1192 (10th Cir. 1980); *Washington Mutual, Inc. v. United States*, 130 Fed. Cl. 653, 686–87 (2017).

[¶46.]     The circuit court concluded U.S. Bank had placed the Department and its auditor in an all-or-nothing situation in which the Department either approved U.S. Bank's methodology and allowed the deduction it sought, or it denied the deduction in total.[14]  Though U.S. Bank describes what it believes was "[t]he obvious third option[,]" it has not, on appeal, identified an alternative calculation that would allow for a deduction of the net taxes it paid.  Instead, U.S. Bank claims the additional option was "for the Department to provide a method that could be uniformly applied by all taxpayers."

[¶47.]     U.S. Bank points to the acknowledgement by the Department's auditor that U.S. Bank should be allowed a deduction in some amount, but it does so to support its recurring argument concerning the need for further guidance—not a specific alternate amount.  Perhaps most conspicuously, U.S. Bank does not identify the amount of federal tax it paid on a separate-company basis for tax year 2012.

---

14.     The issue of alternative relief impacts only 2012 for which the Department denied the deduction in total.

Instead, U.S. Bank makes a vexing argument that seems to place the burden on the Department to calculate an alternative deduction. We believe this view of burden allocation to be unsustainable and agree with the circuit court's conclusion that U.S. Bank did not meet its burden to establish a specific amount for a federal tax deduction in 2012.

## Conclusion

[¶48.] We conclude that the circuit court correctly construed the "taxes imposed" text of SDCL 10-43-10.3(3). Though simply reading the phrase does not resolve the issue of its meaning, the application of our well-established rules of statutory construction leads us to conclude that the Legislature's use of "taxes imposed" was meant to refer to the net amount of federal taxes paid by a taxpayer or the tax liability of an accrual-method taxpayer. We affirm.

[¶49.] JENSEN, Chief Justice, and KERN and MYREN, Justices, and SEVERSON, Retired Justice, concur.

[¶50.] SEVERSON, Retired Justice, sitting for DEVANEY, Justice, who deemed herself disqualified and did not participate.