#30597-a-JMK
**2025 S.D. 36**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JOSHUA LAPIN,                                            Plaintiff and Appellant,

    v.

ZEETOGROUP, LLC,                                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JAMES A. POWER
Judge

\* \* \* \*

JOSHUA LAPIN
Sioux Falls, South Dakota                         Pro se plaintiff and appellant.


ABIGALE M. FARLEY of
Cutler Law Firm
Sioux Falls, South Dakota                         Attorneys for defendant and
    appellee.


\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 13, 2025
OPINION FILED **07/16/25**

#30597

KERN, Justice

[¶1.]	Joshua Lapin, acting pro se, filed a complaint against Zeetogroup, LLC and "John Doe Sender" alleging 46 separate violations of SDCL 37-24-47 prohibiting "spam" e-mails that are misleading, falsified, or contain third-party domain names without the permission of the third-party.[1]  The circuit court dismissed Lapin's claims on summary judgment, concluding that Lapin was not a "resident of this state" within the meaning of SDCL 37-24-41(14) during the time in which he received the allegedly unlawful e-mails and, therefore, could not prove that his e-mail address was a "South Dakota electronic mail address" as required by SDCL 37-24-47.  Lapin appeals.  We affirm.

**Factual and Procedural Background**

[¶2.]	Joshua Lapin was born in California, graduated from high school, and attended college in Colorado but did not finish his degree.  In late 2020 or early 2021, Lapin became a self-described "full-time traveling 'digital nomad', moving from place to place, generally internationally, in 30 day cycles, without a permanent residence in or out of the United States."  Near the beginning of his travels, Lapin rented a room in an Airbnb in Rapid City from February 23 to March 23, 2021.  During this time, Lapin completed the requirements to receive a South Dakota driver's license as a full-time traveler.  Lapin surrendered his Colorado driver's license and rented a personal mailbox (PMB) in Sioux Falls, which served as a mail

---

1.	"Spam" is "unsolicited usually commercial messages (such as emails, text messages, or Internet postings) sent to a large number of recipients or posted in a large number of places."  *Spam*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/spam (last visited July 10, 2025).

-1-

forwarding service.  In an affidavit of residency submitted with his driver's license application, Lapin attested that he was "a South Dakota resident, and [he lived] in a RV/camper/hotel, or [he traveled] full time for work" and that "South Dakota [was his] state of residence, and [he] will return after being absent."  Further, Lapin averred that he "[did] not stay, live in, or maintain a residence in any other state." Lapin received a South Dakota driver's license and registered to vote in Minnehaha County.  Both documents listed his Sioux Falls PMB address.  Lapin left South Dakota on March 24, 2021, and did not return for nearly two years.

[¶3.]        On March 30, 2022, Lapin filed a 46-count complaint in Minnehaha County against Zeetogroup and "John Doe Sender" alleging that between June 15 and July 25, 2021, he received 46 unsolicited commercial e-mails from "John Doe Sender" at his e-mail address that purported to offer free samples of products from Charmin, Red Lobster, Dunkin' Donuts, Adidas, or Victoria's Secret (collectively Brands).  Lapin alleged that Zeetogroup (d/b/a GetItFree.us) advertised its products—free samples—in these e-mails without the Brands' authorization in violation of SDCL 37-24-47(1) and that the e-mails contained "falsified, misrepresented, or forged header information" in violation of SDCL 37-24-47(2).[2] He claimed that pursuant to SDCL 37-24-48, he was entitled to $1,000 per spam e-mail in liquidated damages plus reasonable costs.

[¶4.]        Lapin filed a motion for partial summary judgment on May 1, 2023, requesting that the circuit court resolve two "purely legal questions": (1) whether

---

2.    Lapin voluntarily dismissed all claims against "John Doe Sender" on April 25, 2023.

Lapin was a "resident of this State" under SDCL 37-24-41(14)(c), "notwithstanding the fact that he was traveling continuously for one year and nine months as a 'digital nomad,' and then returned home to South Dakota after the conclusion of his perpetual travel"; and (2) whether an "Advertiser" as defined in SDCL 37-24-41 can "be held liable for spam emails under SDCL 37-24-41 *et seq* which they did not send or ('Initiate') as defined in SDCL 37-24-41, but rather promoted their products and services through the use of spam emails sent by a third or fourth party[.]"

[¶5.]        Zeetogroup filed a motion to dismiss on June 2, 2023, and for attorney fees and costs pursuant to SDCL 15-17-51. Zeetogroup asserted that Lapin failed to state a claim upon which relief could be granted because he was not a "resident of this State" when he received the alleged spam e-mails. After a hearing on June 16, 2023, the circuit court denied Lapin's motion for partial summary judgment and converted Zeetogroup's motion to dismiss into a motion for summary judgment. The court set a briefing schedule and ordered that Zeetogroup's motion for costs and attorney fees be held in abeyance pending the court's resolution of the converted motion.

[¶6.]        In support of its motion for summary judgment, Zeetogroup argued that the plain, ordinary meaning of "resident" requires physical presence in the state. Accordingly, Zeetogroup asserted that Lapin was not a "resident of this State" when the allegedly unlawful e-mails were sent because he was traveling the world as a "digital nomad" and was not physically present in South Dakota. This proposed interpretation, Zeetogroup claimed, was consistent with a recent ruling from the United States District Court for the District of South Dakota in *Lapin v.*

*EverQuote, Inc.*, 4:22-CV-0458-KES, 2023 WL 2072059 (D.S.D. Feb. 17, 2023). There, under materially the same facts, the court concluded that Lapin was not a resident of South Dakota and dismissed Lapin's claims against EverQuote.[3]

[¶7.]    In response, Lapin urged the circuit court to interpret "resident of this State" as requiring only legal residence. Relying on North Dakota caselaw, Lapin argued that his South Dakota driver's license and voter registration was sufficient to establish legal residence. Lapin further argued that he made South Dakota his domicile when he stayed in South Dakota for 30 days and attested in a Department of Public Safety residency affidavit that he was a resident of South Dakota and intended to return to the state following his travels. Lapin also noted that he did, in fact, return to the state in January 2023 and leased an apartment in Sioux Falls where he continues to reside. Lastly, Lapin raised a constitutional challenge asserting that applying SDCL 37-24-41(14) to require a durational residency requirement violates the equal protection clause of the Fourteenth Amendment to the United States Constitution.

[¶8.]    The circuit court held a hearing on Zeetogroup's motion for summary judgment on December 7, 2023. After hearing oral argument from both parties, the

---

3.    Lapin appealed the dismissal of this action to the Eighth Circuit Court of Appeals asserting that the federal district court lacked subject matter jurisdiction. In this matter, Lapin separately moved to stay proceedings until the resolution of the appeal with the Eighth Circuit, which Zeetogroup opposed. The circuit court denied Lapin's motion to stay, reasoning that it was not bound by the interpretations or holdings of the federal district court or the Eighth Circuit. Ultimately, the Eighth Circuit affirmed the decision in *EverQuote* in an unpublished opinion on March 14, 2024. *Lapin v. EverQuote, Inc.*, No. 23-2184, 2024 WL 1109067 (8th Cir. Mar. 14, 2024) (per curiam).

court ruled on the record, granting the motion. The circuit court reasoned that Lapin was not a resident of South Dakota during the applicable timeframe because the ordinary dictionary definition of "resident" "always has an element of physicality to it that you're physically dwelling in a particular place, and that it's not just a temporary abode like a hotel. There is some element of permanence." Regarding Lapin's constitutional challenge, the circuit court held that SDCL 37-24-41(14) does not impose a durational residency requirement. The court acknowledged that "as soon as Mr. Lapin becomes a . . . physical resident of the state with an intent for South Dakota to be where he permanently resides . . . any email after that point he can sue over." The circuit court requested that Zeetogroup prepare an order incorporating its oral conclusions. Subsequently, the circuit court denied Zeetogroup's motion for attorney fees and costs. Lapin appeals raising one issue, which we revise and restate as follows:

> 1. Whether the circuit court erred by granting summary judgment to Zeetogroup on the basis that Lapin was not a "resident of this State" under SDCL 37-24-41(14)(c).

**Analysis and Decision**

[¶9.] "We review grants of summary judgment under the de novo standard of review." *Betty Jean Strom Tr. v. SCS Carbon Transport, LLC*, 2024 S.D. 48, ¶ 21, 11 N.W.3d 71, 81 (quoting *Bialota v. Lakota Lakes, LLC*, 2024 S.D. 7, ¶ 15, 3 N.W.3d 454, 459). "Summary judgment is only appropriate when the court determines that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits of the parties, reveal that there are no genuine issues of material fact and that the moving party is entitled to judgment

as a matter of law." *Id.*, 11 N.W.3d at 81–82 (quoting *McGee v. Spencer Quarries, Inc.*, 2023 S.D. 66, ¶ 18, 1 N.W.3d 614, 620).

[¶10.]    "Resolving an issue of statutory interpretation necessarily begins with an analysis of the statute's text." *In re Implicated Individual*, 2021 S.D. 61, ¶ 16, 966 N.W.2d 578, 583 (citing *Long v. State*, 2017 S.D. 78, ¶ 12, 904 N.W.2d 358, 363). "When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *Healy Ranch, Inc. v. Healy*, 2022 S.D. 43, ¶ 29, 978 N.W.2d 786, 795–96 (citation omitted).

[¶11.]    SDCL 37-24-47 provides:

> No person may advertise in a commercial e-mail advertisement either sent from South Dakota or sent to a South Dakota electronic mail address under any of the following circumstances:
> (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party;
> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information;
> (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

"South Dakota electronic mail address" is defined in SDCL 37-24-41(14) as:

> (a) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state;
> (b) An e-mail address ordinarily accessed from a computer located in this state; or
> (c) An e-mail address furnished to a resident of this state[.]

[¶12.]    Lapin does not argue that his e-mail address is a "South Dakota electronic mail address" under (a) or (b) above, instead asserting that his e-mail

address qualifies under (c) because he is a resident of South Dakota based on his South Dakota driver's license and voter registration. Zeetogroup argues that Lapin was not a resident of South Dakota during the time material to this action because he was not physically present in the state and was instead travelling internationally as a "digital nomad."

*Plain and Ordinary Meaning*

[¶13.]     "In conducting statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole." *Betty Jean Strom Tr.*, 2024 S.D. 48, ¶ 45, 11 N.W.3d at 88 (quoting *State v. Long Soldier*, 2023 S.D. 37, ¶ 11, 994 N.W.2d 212, 217). "Words used are to be understood in their ordinary sense" unless otherwise defined by statute. SDCL 2-14-1. SDCL 37-24-41 does not define "resident of this State" and, therefore, we look to the ordinary meaning. "We may use . . . dictionary definitions to determine the plain and ordinary meaning of undefined words."[4] *U.S. Bank Nat'l Ass'n v. S.D. Dep't of Revenue*, 2022 S.D. 59, ¶ 37, 980 N.W.2d 936, 944 (alteration in original) (quoting *Jackson v. Canyon Place Homeowner's Ass'n, Inc.*, 2007 S.D. 37, ¶ 11, 731 N.W.2d 210, 213). Black's Law

---

4.     Lapin argues against defining residence based on ordinary usage, citing *Stoner v. State Farm Mutual Automobile Insurance Co.*, 780 F.2d 1414, 1417 (8th Cir. 1986) wherein the Eighth Circuit stated that "the terms 'residence' or 'domicile' . . . have specific legal meanings apart from their ordinary usage." However, *Stoner* involved the interpretation of the phrase "lives with you" in an insurance contract. Stoner argued that although she lived in Texas, she should be covered under her father's automobile insurance policy because her parent's address was her declared legal residence. The Eighth Circuit determined that the phrase was unambiguous and that the phrase "lives with you" was not intended to mean legal residence. Contrary to Lapin's position, *Stoner* does not stand for the broad proposition that "residence" and "domicile" cannot be interpreted according to their ordinary usage.

Dictionary defines "resident" as "[s]omeone who lives permanently in a particular place; specif., a person who has established a domicile in a given jurisdiction[,]" "has a home in a particular place[,]" or "is staying in a particular hotel, apartment building, etc." *Resident*, Black's Law Dictionary (12th ed. 2024). Similarly, Merriam-Webster defines "resident" as "one who resides in a place" and "reside" as "to dwell permanently or continuously" or "occupy a place as one's legal domicile." *Resident*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/resident (last visited July 9, 2025); *Reside*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/resides (last visited July 9, 2025). Here, dictionary definitions alone will not suffice to resolve the question presented because they refer to both actual residency (physically residing in a place) and legal residency (domicile).

[¶14.]     It is well established that residence and domicile are distinct legal concepts. *State ex. rel. Jealous of Him v. Mills*, 2001 S.D. 65, ¶ 10, 627 N.W.2d 790, 793 ("Residence and domicile are not interchangeable concepts." (citation omitted)); *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("[O]ne can reside in one place but be domiciled in another.") "'Residence' signifies living in [a] particular locality while 'domicile' means living in that locality with intent to make it a fixed and permanent home." *In re G.R.F.*, 1997 S.D. 112, ¶ 16 n.4, 569 N.W.2d 29, 33 n.4 (alteration in original) (citation omitted); *see also Domicile*, Black's Law Dictionary (12th ed. 2024) (defining "domicile" as "[t]he place at which a person has been physically present and that the person regards as home; a

person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.").

[¶15.]    With this distinction in mind, we conclude the Legislature's use of the term "resident" in SDCL 37-24-41(14)(c) as opposed to "domiciliary" is indicative of its intent. We presume that "the Legislature said what it meant and meant what it said from the text of the statute." *Benson v. State*, 2006 S.D. 8, ¶ 72 n.15, 719 N.W.2d 131, 159 n.15 (citation omitted). Accordingly, interpreting "resident" to mean "domiciliary" without additional textual support for that interpretation would disregard the language used by the Legislature. We therefore conclude that a plaintiff must prove actual residency to be considered a "resident of this State" under this provision.

*Parsley and Rush*

[¶16.]    The circuit court in rendering its opinion referenced *Parsley v. Parsley*, 2007 S.D. 58, 734 N.W.2d 813 and *Rush v. Rush*, 2015 S.D. 56, 866 N.W.2d 556, cases in which we were called upon to interpret the phrase "resident of this State" as used in SDCL 25-4-30 governing jurisdiction in divorce actions. While we do not view *Parsley* to be dispositive for the purpose of determining the meaning of resident within SDCL 37-24-41(14)(c), the case is instructive. In *Parsley*, we looked to the Supreme Court of Iowa's definition of residence in the context of divorce proceedings where it explained that:

> [I]t follows that the residence must be an actual residence as distinguished from a temporary abiding place, and, further than this, it must not be a residence solely for the purpose of procuring a divorce only. In *Hinds v. Hinds*, [1 Iowa 36 (1855)], it was held that a legal residence, not an actual residing alone, but such a residence as that, when a man leaves it temporarily

> on business, he has an intention of returning to, and which, when he has returned, becomes, and is, de facto and de jure, his domicile.

2007 S.D. 58, ¶ 17, 734 N.W.2d at 818 (alterations in original) (quoting *Snyder v. Snyder*, 35 N.W.2d 32, 33–34 (Iowa 1948)). In *Parsley*, we affirmed the circuit court's determination that the husband was a resident of South Dakota at the time he filed for divorce because he designated South Dakota as his legal residence for tax purposes, acquired property in the state with the intent of building a home, obtained a South Dakota driver's license, registered his vehicles in the state, registered to vote in Jones County, and began construction on a permanent home, where he lived for three years before he filed for divorce. *Id.* ¶¶ 18–19, 734 N.W.2d at 818–19. Based on the evidence of "lengthy ties to South Dakota," we concluded that there was "nothing to indicate that [husband] established this residency for purposes of obtaining a divorce." *Id.* ¶ 19, 734 N.W.2d at 818–19. Similarly in *Rush*, we determined that the husband had established residency in South Dakota because he obtained a South Dakota driver's license, registered to vote, began receiving mail in Winner, opened a South Dakota bank account and made a deposit, obtained a job in South Dakota, and resided in the state for 45 days before filing for divorce. 2015 S.D. 56, ¶ 14, 866 N.W.2d at 561.

[¶17.] The court in *EverQuote* also considered *Parsley* and *Rush*, referencing the first half of the definition provided in *Snyder*. The court observed that "[b]y distinguishing actual residence from a temporary abiding place, the South Dakota Supreme Court made clear that it views residence as being the location where someone lives." *EverQuote Inc.*, 2023 WL 2072059 at *10. The *EverQuote* court

further noted that in both *Parsley* and *Rush*, this Court "found that the relevant individuals were residents for purposes of SDCL § 25-4-30, and in both cases the individuals had significant physical presence in the state[,]" before concluding that "[t]hese two cases underscore that ordinarily, the term resident refers to where one lives." *Id.*

[¶18.] Lapin argues that the circuit court erred by relying on *Parsley* and *Rush* because divorce statutes are strictly construed, but remedial statutes like SDCL 37-41 *et seq.*, in Lapin's view, are to be liberally construed. As an initial matter, Lapin has not cited any South Dakota law supporting his assertion that divorce statutes are strictly construed. Yet, even if we applied the more "liberal" standard Lapin suggests, he still cannot meet its requirements.

[¶19.] As support for his liberal/strict dichotomy, Lapin cites *State ex rel. Johnson v. Cotton*, 67 S.D. 63, 289 N.W. 71 (S.D. 1939) and the Iowa Supreme Court's decision in *Root v. Toney*, 841 N.W.2d 83 (Iowa 2013). However, both cases contemplate physical presence during the time period relevant to the action—in *Root*, physical residence in the county at the time of filing for an order for protection and in *Johnson*, physical residence in the school district at the time the students wished to attend school. Here, while Lapin was physically present in South Dakota at *a* point in time, he was not physically present in the state during the *relevant* point in time—when he received the allegedly unlawful e-mails giving rise to his claims.

[¶20.] While we do not adopt the domicile standard established in *Parsley* for divorce jurisdiction, the distinction between actual residence and a temporary

-11-

abiding place is instructive. Here, Lapin stayed at an Airbnb in South Dakota for 30 days in February and March of 2021. During this time, he did not get a job, enroll in school, sign a lease, purchase property, or take any other meaningful action suggesting an intent to maintain an actual residence in South Dakota. The address used for his driver's license application and voter registration was his Sioux Falls PMB address, where he did not live, and which simply served as a mail forwarding service. In the residency affidavit, Lapin averred that he intended to return to South Dakota, but also that he was a full-time traveler which suggests that his actual intention was to leave the state to travel for an indefinite period of time. In fact, Lapin did leave the state at the end of his 30-day stay and traveled the world for two years, staying in each location for a similar 30-day duration. On these facts, South Dakota was no more than a temporary abiding place for Lapin at the time of his Airbnb stay. Regardless, Lapin did not receive the allegedly unlawful e-mails during his brief stay in South Dakota in early 2021, but rather received them approximately three months after he left to continue his travels.

*Residency for Other Purposes*

[¶21.] Lapin highlights that he and other full-time travelers are considered residents of South Dakota for many different purposes, including obtaining a driver's license, voting, and being summoned for jury duty.[5] Lapin asserts that definitions of residency appearing elsewhere in the code should be applied here. In

---

5. Lapin also asserts that this Court has recognized a full-time traveler's residency before, citing *Payne v. State Farm Fire & Casualty Co.*, 2022 S.D. 3, 969 N.W.2d 723, where the Paynes were domiciled in Florida and traveled full-time in an RV. However, the Paynes' residency was not at issue in the case and, thus, their status as full-time travelers did not bear on our decision.

support of this argument, Lapin relies on SDCL 2-14-4 which provides that "[w]henever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs except where a contrary intention plainly appears." Specifically, Lapin points to SDCL 12-1-4, which defines residency for voting purposes. In July 2023, after Lapin first registered to vote in South Dakota and after the timeframe alleged in the complaint, SDCL 12-1-4 was amended.[6] Based on transcripts Lapin obtained from the legislative committee hearings leading up to the proposed amendment,[7] Lapin asserts that the amendment was intended to exclude full-time travelers who stayed only the required 24-hours in South Dakota to obtain a South Dakota driver's

---

6.  During its 2025 session, the Legislature amended SDCL 12-1-4 relating to state, county, and district elections and specifically defined a resident as "an individual who maintains an actual fixed permanent dwelling, establishment, or any other abode to which the person returns where the individual lives and usually sleeps, for at least thirty consecutive days. An individual who is a resident of this state remains a resident during an absence from this state, if the individual intends to return to this state after a period of absence. An individual may only be a resident of one place." 2025 S.D. Sess. Laws ch. 58 (HB 1208). The amended law set to go into effect January 1, 2026, also provides that "[i]f an individual applies to register as a voter of this state or to vote by absentee ballot, using only the address of a commercial mail receiving agency, mail forwarding service . . . without providing a description of the location of the individual's habitation, the individual does not meet the requirements to be a resident of this state for the purposes of this title[.]" *Id.*

7.  Lapin specifically points to statements by the bill's primary sponsor expressing concern about full-time travelers becoming voting residents of South Dakota based on an overnight stay alone. As an initial matter, the definition of residency in SDCL 12-1-4 is irrelevant to Lapin's claims. Regardless, "[w]e have consistently held that statements of individual legislators are not persuasive to establish the intent of the Legislature for a particular statute." *Benson*, 2006 S.D. 8, ¶ 72 n.15, 710 N.W.2d at 159 n.15 (citing *Cummings v. Mickelson*, 495 N.W.2d 493, 499 n.7 (S.D. 1993)). Further, we resort to legislative history only when a statute is ambiguous. *Farm Bureau Life Ins. Co. v. Dolly*, 2018 S.D. 28, ¶ 9, 910 N.W.2d 196, 199.

license. Accordingly, Lapin argues that in June and July 2021, before the amendment to SDCL 12-1-4, he satisfied the residency requirement to vote in South Dakota and that the definition of residency used in the pre-amendment version of SDCL 12-1-4 should be applied here. We are not persuaded.

[¶22.] SDCL 2-14-4 does not apply in the manner Lapin asserts because it provides that a definition provided in another statute is applicable wherever it occurs "*except where a contrary intention plainly appears*." (Emphasis added.) SDCL 12-1-4, in both the version in effect in 2021 and the amended version, specifically states that the definition of residence is provided "[f]or the purposes of this title"—that is, Title 12 governing elections. Thus, it plainly appears that the Legislature did not intend for the definition of residence under Title 12 to apply elsewhere.

[¶23.] The same can be said regarding Lapin's residency for purposes of SDCL chapter 32-12 governing driver's licenses. An application to receive a driver's license must include "the full legal name or any other name taken for lawful purposes, date of birth, social security number, sex, and current mailing address and residential address of the applicant[.]" SDCL 32-12-3. An applicant must also "present to the examiner at least two documents containing the applicant's name and address of principal residence in order to establish the applicant's address of principal residence." SDCL 32-12-3.5. SDCL 32-12-1 defines "principal residence" as "the location where a person currently resides even if at a temporary address." As above, SDCL 32-12-1 specifies that the definitions are provided for terms "used in this chapter[.]" Accordingly, the Legislature has not adopted a single,

transferrable definition of residency that applies in all contexts throughout the code, and we conclude that Lapin's residency to obtain a driver's license and vote is not dispositive of his status as a resident under SDCL 37-24-41(14)(c).

*Equal Protection*

[¶24.]    Lapin argued below that "[a]ny durational residency requirement in excess of the 30 days [Lapin] spent from February-March 2021 in the AirBnb . . . , as a prerequisite to obtain the benefits and protections of this state enjoyed by more established, 'old timer' residents of the state, would amount to this court judicially taking upon itself to write in an un-legislated durational residency requirement[,]" and would be unconstitutional.  In support of this position, Lapin cited *Dunn v. Blumstein*, in which the United States Supreme Court concluded that Tennessee's one-year durational residency requirement to register to vote burdened the constitutional right to travel and was not justified by a compelling state interest. 405 U.S. 330 (1972).  The Court determined that "30 days appears to be an ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud—and a year, or three months, too much." *Id.* at 348. Accordingly, Lapin argued that because he spent 30 days in South Dakota in February and March 2021, any additional required period of residency would violate the 30-day period accepted by the Supreme Court and would, therefore, be an unconstitutional infringement on Lapin's right to travel.

[¶25.]    The circuit court, however, concluded that SDCL 37-24-41(14) does not impose a durational residency requirement.  The court held that as soon as a person becomes a "physical resident of the state with an intent for South Dakota to be

where [they] permanently reside[,]" they are considered a "resident of this State" under SDCL 37-24-41(14)(c). Specifically referring to Lapin, the circuit court stated "as soon as [Lapin] gets an apartment lease here or something like that, which I think he's already done[,] I think any email after that point he can sue over."

[¶26.] Lapin does not challenge the circuit court's ruling regarding the durational residency requirement, but instead raises an equal protection challenge asserting that the circuit court erred by imposing a requirement that an individual must occupy a fixed dwelling such as an apartment or house to be considered a resident under SDCL 37-24-41(14)(c). However, "[w]e will not consider an argument raised for the first time on appeal." *FDJ, LLC v. Determan*, 2024 S.D. 42, ¶ 7 n.1, 10 N.W.3d 220, 223 n.1 (quoting *Kansas Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 116 (S.D. 1994)). Because Lapin did not raise this issue below to allow the circuit court to address it in the first instance, we decline to do so here.

*Summary Judgment*

[¶27.] In light of the foregoing analysis, we must determine whether the circuit court appropriately granted summary judgment to Zeetogroup. Lapin agrees with the circuit court's finding that "[t]he material facts as it pertains to whether [Lapin] was a 'resident of this state' are not genuinely disputed by the parties." The undisputed facts establish that Lapin stayed in an Airbnb for 30 days in February and March 2021, which was the first time he had been in South Dakota. While staying in the Airbnb, he completed the process to obtain a driver's license and register to vote in South Dakota. He established a PMB in Sioux Falls, which acted as a mail forwarding service. After 30 days, Lapin left South Dakota to travel

nationally and internationally, and did not return until January 2023. Approximately three months after Lapin left South Dakota, he received the alleged spam e-mails that form the basis for this lawsuit. At that time, Lapin was not physically present in South Dakota, did not maintain a home in South Dakota, and did not work for a South Dakota employer or have any other meaningful contact with South Dakota. Based on these undisputed material facts, we conclude that Lapin was not a "resident of this State" as used in SDCL 37-24-41(14)(c) during the timeframe relevant to his claims. We, therefore, affirm the circuit court's grant of summary judgment.

[¶28.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.