#30287-r-MES
**2024 S.D. 2**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BERNARD STOCKWELL,                    Plaintiff and Appellant,

    v.

MCCOOK COUNTY BOARD OF
COMMISSIONERS, MCCOOK COUNTY
BOARD OF ADJUSTMENT, and
MCCOOK COUNTY ZONING
ADMINISTRATOR,                    Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRIS S. GILES
Judge

* * * *

MICHAEL F. NADOLSKI
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz & Lebrun, P.C.
Sioux Falls, South Dakota                    Attorneys for plaintiff and
appellant.


MIKE C. FINK
McCook County State's Attorney
Bridgewater, South Dakota                    Attorneys for defendants and
appellees.

* * * *

CONSIDERED ON BRIEFS
AUGUST 29, 2023
OPINION FILED **01/10/2024**

SALTER, Justice

[¶1.]        The McCook County Board of Adjustment determined that five lots owned by Bernard Stockwell in an area zoned for agricultural use did not include individual building eligibilities under the 2014 McCook County Zoning Ordinance (2014 ordinance).  Stockwell petitioned for a writ of certiorari and sought declaratory relief in a single action, naming the McCook County Board of Commissioners (BOC), the Board of Adjustment (BOA), and the McCook County Zoning Administrator as adverse parties.  As to both of Stockwell's requests for relief, the collective group of McCook County entities (the County) sought summary judgment, which the circuit court granted.  Stockwell now appeals to this Court. We reverse.

### Factual and Procedural Background

[¶2.]        In December 1999, the BOC approved a replat of Stockwell's agriculturally zoned McCook County property that resulted in five individual lots ranging in size from 3.8 to 5.4 acres.  The replat was promptly filed with the register of deeds that same month.  In 2000, the BOC approved Stockwell's request to rezone his lots as "rural residential," but residents referred the decision and defeated it in a subsequent election.  Twenty-two years later, in 2022, Stockwell made a second rezoning request, which the BOC denied.

[¶3.]        This prompted Stockwell to seek an opinion from the McCook County Zoning Administrator regarding the number of building eligibilities for his lots. Based on her interpretation of McCook County's zoning ordinance, the zoning administrator determined that Stockwell's five lots shared a single building

eligibility. Stockwell appealed this determination to the BOA, arguing that each of the five affected lots should have a building eligibility under McCook County's zoning ordinance.

[¶4.]        The operative ordinance was enacted in 2014, and as is relevant here, lists a single-family dwelling among the permitted uses within an area zoned for agricultural use, provided the dwelling was located on a "lot of record." The 2014 ordinance allows one building eligibility for each lot of record that is a minimum of one acre and less than 80 acres in size and has no other dwellings located on it.

[¶5.]        At issue before the BOA was whether Stockwell's lots were lots of record which the 2014 ordinance defines as follows:

> A lot of record is a lot which is part of a subdivision or a certified survey map which has been recorded in the office of the County Register of Deeds; or a parcel of land, the deed to which was recorded in the office of said Register of Deeds prior to *the effective date of this ordinance.*

(Emphasis added.)

[¶6.]        The zoning administrator argued to the BOA that the definition's reference to "this ordinance" meant McCook County's first zoning ordinance enacted in 1989, not the 2014 ordinance in which it was contained. And because Stockwell platted his lots after the effective date of the 1989 ordinance, the zoning administrator concluded his five lots were not lots of record and not, therefore, entitled to individual building eligibilities.

[¶7.]        However, Stockwell advanced a textual argument, using not only the language defining a lot of record in the 2014 ordinance, but also the plainly stated "[e]ffective [d]ate" of October 29, 2014, which appears on the first page of the

ordinance. Under the plain reading of the 2014 ordinance, Stockwell argued each parcel was unquestionably a "lot of record" because all of them were reflected in a replatted subdivision that was recorded in 1999—long before the effective date of the 2014 ordinance.

[¶8.] The BOA agreed with the zoning administrator and affirmed the determination that Stockwell's five lots shared one building eligibility. Stockwell then petitioned the circuit court for a writ of certiorari and also sought declaratory relief. The County filed a motion for summary judgment seeking denial of both the petition and the declaratory judgment action.

[¶9.] At the related hearing, both Stockwell and the County raised the same arguments to the court that they had made before the BOA—Stockwell arguing for a textual interpretation of the ordinance, and the County arguing that the 1989 ordinance remained operative. The BOC's intent, the County asserted, was to maintain the agricultural nature of the district where Stockwell's lots were located, and the "lot of record" definition served as a "grandfathering" provision to allow building eligibilities for those lots that existed prior to the first enactment of the zoning ordinance in 1989.[1] It argued that the language of each successive ordinance enactment, including the 2014 ordinance, indicated prior ordinances were

---

1. The County's brief in support of summary judgment seemed to cite to a nonconforming use provision, not related to agriculturally zoned land, in the 1989 ordinance to support its grandfathering argument. However, the County left rather undeveloped the applicability of that provision, which stated, in relevant part, that "[o]n any single lot of record at the effective date of adoption or amendment of these regulations, in any district in which single-family dwellings are permitted, a single-family dwelling . . . may be erected notwithstanding lot area and width requirements . . . ."

only repealed to the extent that the ordinances conflicted and that the "lot of record definition" had remained "substantially unchanged since 1989." Therefore, a textual application of the 2014 ordinance, it contended, would be at odds with the definition's intended purpose.[2]

[¶10.]     The County also made a second "grandfathering" argument based on subsequent ordinance reenactments that allowed for "clustering" building eligibilities.[3] The County suggested that when Stockwell replatted his lots in 1999, he intended to cluster the lots, but Stockwell did not obtain building permits. In 2002, the ordinance was reenacted yet again. This iteration required the execution and recording of a legal document evidencing the transfer of a building eligibility to allow for clustering. Stockwell did not record any such document. Therefore, the County argued, Stockwell's noncompliance with the clustering requirements resulted in unperfected building eligibilities for his lots and, thus, when clustering was removed by the 2007 ordinance, Stockwell's lots could not qualify as a grandfathered nonconforming use.

[¶11.]     In an oral ruling, the circuit court granted the County's motion, despite concluding that the 2014 ordinance's lot of record definition applied and stating that "each of these five lots, they are definitely, by the plain language, lots of record now

---

2.     The County first enacted its zoning ordinance in 1981, which was then explicitly repealed by the 1989 ordinance. And in 1998, 1999, 2001, 2002, 2007, and 2014, the County again revised its ordinance. But instead of simply amending particular provisions and leaving the others intact, the County reenacted its entire zoning ordinance. Critically, for each reenacted zoning ordinance compilation, the effective date did not relate back to 1989 but, rather, specified a date within the particular year of reenactment.

3.     The County first allowed for clustering in 1998.

by what the ordinances say[.]" But the court diverted from the text and gave preeminence to what it believed to be the overall purpose and intent of the ordinance's agricultural zoning regulations. The court stated, "It's clear . . . that the overall intent during each of these different [ordinance] passages over time has been to allow fewer building eligibilities in the ag district," and so, "[t]he Stockwells are asking the Court to adopt an interpretation which this Court believes runs contrary to the purpose of the comprehensive zoning regulations as a whole." The circuit court determined that even though Stockwell's lots were lots of record under the 2014 ordinance, that "does not necessarily mean they automatically became buildable lots."

[¶12.]    In the circuit court's view, the lots could have become buildable lots had Stockwell done something more. The court agreed with the County's position that the purpose of the "lot of record" language was to serve as a grandfathering provision and stated that the language was an attempt to "grandfather in" lots that had acquired buildable status prior to the most recent zoning enactment. Based on this view, the court suggested that had Stockwell recorded documentation of an intent to transfer building eligibilities as mandated by the 2001 and 2002 ordinances' clustering requirements, his lots would have acquired buildable status and, thus, would be grandfathered. Failing to do so, the circuit court concluded, meant the lots could not now receive building eligibilities.

[¶13.]    After explaining that its interpretation of the plain text of the 2014 ordinance was also informed by its view of what the court believed the BOC actually intended, the circuit court cited the portion of SDCL 11-2-61.1 that provides, "The

court shall give deference to the decision of the approving authority in interpreting the authority's ordinances."[4] In doing so, the court endorsed the zoning administrator's interpretation, recognizing it to be consistent with the historic understanding that with each passage of the zoning ordinance, the County sought to further preserve the agricultural nature of the district.

[¶14.] Stockwell appeals the circuit court's decision, arguing that the court erred when it failed to apply the plain text of the 2014 ordinance and granted the County's motion for summary judgment. The County claims, as it did before the BOA and circuit court, that Stockwell's lots do not meet the "lot of record" definition under the 1989 ordinance.

## Standard of Review

[¶15.] We will not disturb the BOA's decision under a writ of certiorari unless it did not have jurisdiction, did not pursue "in a regular manner the authority conferred upon it[,]" or "did some act forbidden by law or neglected to do some act required by law." *Ehlebracht v. Deuel Cnty. Plan. Comm'n*, 2022 S.D. 18, ¶¶ 12–13, 972 N.W.2d 464, 470 (citations omitted). Here, we must determine whether the BOA's decision contravenes the text of the 2014 ordinance, which as we explain

---

4.    In its entirety, SDCL 11-2-61.1 provides:

> Any appeal of a decision of granting or denying a conditional use permit shall be brought under a petition, duly verified, for a writ of certiorari directed to the approving authority and, notwithstanding any provision of law to the contrary, shall be determined under a writ of certiorari standard regardless of the form of the approving authority. The court shall give deference to the decision of the approving authority in interpreting the authority's ordinances.

below, is a legal question we review de novo. *Croell Redi-Mix, Inc. v. Pennington Cnty. Bd. of Comm'rs*, 2017 S.D. 87, ¶ 26, 905 N.W.2d 344, 351. The request for declaratory relief also turns on the legal question of ordinance interpretation and is not entitled to deference. *Luze v. New FB Co.*, 2020 S.D. 70, ¶ 14, 952 N.W.2d 264, 269 ("We review declaratory judgments as we would any other order, judgment, or decree. We therefore review de novo the circuit court's interpretation of a statute.").

## Analysis and Decision

[¶16.] The circuit court relied on the provisions of SDCL 11-2-61.1 for the proposition that a court undertaking certiorari review must "give deference to the decision of the approving authority in interpreting the authority's ordinances." But this was problematic for two reasons—(1) SDCL 11-2-61.1 does not apply in this case and (2) the similar common law rule that does apply does not permit deference here.

[¶17.] Strictly speaking, SDCL 11-2-61.1 only applies to certiorari proceedings involving "[a]ny appeal of a decision of granting or denying a conditional use permit[.]" *See e.g. Dakota Constructors, Inc. v. Hanson Cnty. Bd. of Adjustment*, 2023 S.D. 38, 994 N.W.2d 222 (applying SDCL 11-2-61.1 to challenge involving a conditional use permit). Here, Stockwell argues his lots should receive building eligibilities as *permitted* uses, not conditional ones.

[¶18.] However, even instances like this one, a rule similar to SDCL 11-2-61.1 applies by virtue of our decisional law, but it does not permit deference in the absence of an ordinance's textual ambiguity. In *Wegner Auto Co., Inc. v. Ballard*, 353 N.W.2d 57 (S.D. 1984), we affirmed a circuit court's decision to grant summary

judgment based upon its interpretation of a zoning ordinance that established a party's use was not permitted. We acknowledged but ultimately rejected an argument for deference, reasoning as follows:

> Appellants correctly argue that in passing on the meaning of a zoning ordinance, the courts will consider and give weight to the construction of the ordinance by those administering the ordinance. However, an administrative construction is not binding on the court, which is free to overrule the construction if it is deemed to be wrong or erroneous.

*Wegner Auto*, 353 N.W.2d at 58.

[¶19.] Before the enactment of SDCL 11-2-61.1, we quoted this rule in *Croell Redi-Mix* and held that "[w]hen the meaning of an ordinance is unambiguous, the contrary interpretation of those administering the ordinance is not entitled to deference." 2017 S.D. 87, ¶ 20, 905 N.W.2d at 350 (quoting *Wegner Auto*, 353 N.W.2d at 58).[5] We specifically recognized the relationship between this common law rule and the one now contained in SDCL 11-2-61.1 in our recent *Dakota Constructors* decision. *See Dakota Constructors*, 2023 S.D. 38, ¶ 11, 994 N.W.2d at 226.

[¶20.] Here, the circuit court did not identify any ambiguity in the 2014 ordinance that would justify deferential review, and the County has not argued that the 2014 ordinance was ambiguous. In fact, as Stockwell notes, the County did not respond to the central argument in Stockwell's opening appellate brief that the portions of the 2014 ordinance at issue here are *not* ambiguous. We agree with the

---

5. An "[a]mbiguity exists when something is capable of being understood by reasonably well-informed persons in either of two or more senses." *Healy Ranch, Inc. v. Healy*, 2022 S.D. 43, ¶ 30 n.6, 978 N.W.2d 786, 796 n.6 (quoting *Kling v. Stern*, 2007 S.D. 51, ¶ 6, 733 N.W.2d 615, 617 (cleaned up)).

view that these textual provisions are unambiguous, and, consequently, the BOA's interpretation of the 2014 ordinance is not entitled to deference. The correctness of the circuit court's decision must instead be determined as a legal question using our well-settled rules for interpreting text.

[¶21.] "Zoning ordinances are interpreted according to the rules of statutory construction and any rules of construction included in the ordinances themselves." *Hoffman v. Van Wyk*, 2017 S.D. 48, ¶ 8, 900 N.W.2d 596, 598 (quoting *Even v. City of Parker*, 1999 S.D. 72, ¶ 8, 597 N.W.2d 670, 673). When confronted with an issue of statutory interpretation, we "necessarily begin[] with an analysis of the statute's text." *In re Implicated Individual*, 2021 S.D. 61, ¶ 16, 966 N.W.2d 578, 583. If this inquiry reveals language that "is clear, certain and unambiguous, our only function is to declare the meaning of the ordinance as expressed." *City of Sioux Falls v. Strizheus*, 2022 S.D. 81, ¶ 19, 984 N.W.2d 119, 124 (quoting *Peters v. Spearfish ETJ Plan. Comm'n*, 1997 S.D. 105, ¶ 8, 567 N.W.2d 880, 884). We must, in other words, apply "the cardinal rule of statutory interpretation—simply read the text and apply it." *In re Implicated Individual*, 2021 S.D. 61, ¶ 28, 966 N.W.2d at 586.

[¶22.] Intent "is determined from what [a legislative body] said, rather than what we think it should have said." *Reck v. S.D. Bd. of Pardons & Paroles*, 2019 S.D. 42, ¶ 11, 932 N.W.2d 135, 139 (citation omitted). We "must confine [ourselves] to the language used." *Rhines v. S.D. Dep't of Corrs.*, 2019 S.D. 59, ¶ 13, 935 N.W.2d 541, 545. Only when an ordinance is ambiguous do we "look to 'the legislative history, title, and the total content of the legislation[.]'" *Zoss v. Shaefers*,

1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552 (alteration in original) (quoting *LaBore v. Muth*, 473 N.W.2d 485, 488 (S.D. 1991)).

[¶23.] The circuit court erred by deviating from these well-established rules of statutory construction in favor of its effort to ascertain what it believed to be the broader "intent of the zoning regulations." In so doing, the court failed to apply the unambiguous text of the 2014 ordinance, which the court acknowledged made clear that Stockwell's lots were, indeed, lots of record.

[¶24.] The text at issue, "effective date of this ordinance," can only be subject to one meaning—the effective date of the 2014 ordinance. On its first page, the ordinance itself expressly states, "Effective Date: October 29, 2014 (20 days after 2nd publication date)[.]" There is no way to read this effective date to relate to another, earlier version of the McCook County zoning ordinance. Put simply, "it means what it says[.]" *In re Implicated Individual*, 2021 S.D. 61, ¶ 28, 966 N.W.2d at 586.

[¶25.] The circuit court recognized as much and acknowledged the unmistakable meaning and effect of the 2014 ordinance:

> When it was initially recorded, it was not a lot of record under the 1998 ordinance. *Now, when the 1999 ordinance and subsequent ordinances were passed, these platted lots then did become lots of record because they were properly recorded when each of the new ordinances were passed.*
>
> ****
>
> When the Court looks at each of these five lots, *they are definitely, by the plain language, lots of record now by what the ordinances say . . . .*

(Emphasis added.)

[¶26.]     But despite this correct reading of the 2014 ordinance, the circuit court ultimately did not apply it. Although Stockwell's lots had become lots of record under the plain provisions of the 1999, 2001, 2002, 2007, and 2014 ordinances, the court reasoned they had never become "buildable lots." Reading the term in context with the court's analysis, it appears the court perceived that Stockwell's lots could have effectively been grandfathered in as buildable lots but only if Stockwell complied with the clustering requirements mandated by the long-since superseded 2001 and 2002 versions of the zoning ordinance.[6]

[¶27.]     The circuit court also considered what it believed the BOC intended with its lot of record definition. The court noted, in this regard, that residential uses within agriculturally zoned areas had become more restricted with successive iterations of the zoning ordinance. Still too, the court mentioned Stockwell's previous unsuccessful efforts to rezone his lots to permit residential development. And though the court credited Stockwell with "com[ing] up with a very creative argument[,]" it stated:

> Interpreting the zoning ordinances in a manner as requested by the Stockwells would produce an absurd result, inconsistent with the ordinances as a whole and how they have been interpreted and applied in the past.

[¶28.]     We cannot agree with the circuit court's absurd-result characterization or the court's conclusion that more is required for Stockwell's lots before they could be considered buildable. As to the former, applying the plain language of the 2014

---

6.     In the court's view, "the language [of the 2014 ordinance] definitely creates" what it described as "a loophole for the lots at issue to now argue that they should become buildable sites."

ordinance does not lead to an absurd result. Given our role as a court and not a policy-making body, we have held that "our standard for relative absurdity should be high." *In re Implicated Individual*, 2021 S.D. 61, ¶ 25, 966 N.W.2d at 585 (citation omitted). Something that may seem unwise or improvident is not necessarily absurd. *Id.* ¶ 26 (citing Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 237 (2012)). Here, there is nothing absurd about Stockwell having individual building eligibilities for his lots. It may be exceptional within the agriculturally zoned area, but it does not satisfy the high threshold for absurdity.

[¶29.]    And as to the circuit court's conclusion that more was required for Stockwell's lots to become buildable, there is no requirement under the 2014 ordinance that Stockwell seek approval to cluster his lots and building eligibilities. The requirement to seek approval to group, or cluster, building eligibilities for single-family dwellings in an area zoned for agricultural use was eliminated in the 2007 ordinance and no longer exists.[7]

---

7.    The circuit court seemed to combine the County's "lot of record" and "clustering" arguments. Instead of determining that Stockwell could acquire building eligibilities by *either* meeting the 1989 ordinance's lot of record definition *or* by qualifying as a nonconforming use if he had met the clustering requirements of the 2001 and 2002 ordinances, the court determined that Stockwell had to meet *both* the *2014 ordinance's* lot of record definition *and* the clustering requirements. But this is not what the ordinance language requires. In fact, the 2007 ordinance, which removed the clustering requirements, is the first time "lot of record" is used in connection with an agriculturally zoned area, where the category "Single Family Dwelling located on a Lot of Record" is listed among the permitted uses. Thus, "lot of record" was never used in conjunction with the clustering requirements.

[¶30.]     The County, for its part, continues to argue that the lot of record definition of the 1989 ordinance should apply using the language from the conditional repealer provision restated in the various versions of the zoning ordinances: "That this Ordinance . . . repeals any other ordinance or parts thereof in conflict with this Ordinance." In the County's view, the lot of record definition in the 2014 ordinance is not in conflict with the 1989 version and, therefore, cannot be viewed as repealing it. But this claim is unsustainable.

[¶31.]     Initially, there is some question as to whether the County's claim that the 1989 lot of record definition applies is properly before us. Even though it ultimately denied relief, the circuit court decided that the 2014 ordinance's definition applied and that Stockwell's lots were lots of record. Stockwell argues that the County cannot logically advance its argument on appeal—the 1989 ordinance applies because the 2014 ordinance did not repeal it—without first challenging the circuit court's determination that the 2014 ordinance's lot of record definition *does* apply. *See* SDCL 15-26A-22 (authorizing an appellee to "obtain review of a judgment or order entered in the same action which may adversely affect him by filing a notice of review"). However, we think it is unnecessary to resolve this issue given our disposition of the merits of the County's argument.

[¶32.]     Indeed, even if the County had preserved its argument that the 1989 ordinance applied, we think it is not supportable. First, the 2014 ordinance definition is precise—a lot of record is a lot that is recorded prior to the *effective date of this ordinance*. The phrase, "this Ordinance," in turn, is the "2014 Revised Zoning Ordinance for McCook County," which, according to the text of its first page,

-13-

is October 29, 2014. The language is so clear and unambiguous that the circuit court needed only to apply it.

[¶33.]    The County does not argue that an ambiguity exists within the text of the 2014 ordinance. The County does suggest that "[a]t best, Stockwell's argument points out an inconsistency in the language." But this assertion seems to contemplate inconsistency between the lot of record definitions contained in the 1989 and 2014 ordinances—"prior to the adoption of these regulations" vs. "prior to the effective date of this ordinance." Or perhaps the County is suggesting inconsistency in the 1989 ordinance's lot of record definition and the designation of October 29, 2014, as the effective date of "this ordinance." In either event, this sort of conflict does not create an ambiguity for which we would defer to the County's interpretation; it implicates the repealer language which is conditioned upon conflict and requires the application of the most recent version over a prior conflicting one.

[¶34.]    Finally, though not bearing upon our decision, we note that the County has a clear remedial course outside of this litigation. As a local governmental body exercising legislative power, the BOC may utilize its authority to amend or repeal any part of its zoning ordinance to clarify its intent. For now, however, it cannot enact an unambiguous ordinance that says one thing only to say it should not apply because it intended something different. If the circuit court was accurate when it described the lot of record definition as a "loophole," it is better closed by the governmental body which created it—not the courts. *See Signori v. Fed. Nat'l*

*Mortg. Ass'n*, 934 F. Supp. 2d 1364, 1368 (S.D. Fla. 2013) ("If the statute, as written, creates a loophole . . ., it is up to Congress, not this Court, to close that loophole.").

## Conclusion

[¶35.]     The 2014 ordinance's lot of record definition unambiguously refers to the effective date of the 2014 ordinance. Despite recognizing that Stockwell's lots satisfy this definition, the circuit court erroneously supplanted a plain application of the text with a determination of the BOC's intent to hold Stockwell's lots were in fact not buildable. We reverse.

[¶36.]     JENSEN, Chief Justice, and MYREN, Justice, concur.

[¶37.]     KERN and DEVANEY, Justices, dissent.

DEVANEY, Justice (dissenting).

[¶38.]     When reviewing whether the circuit court erred in granting the County's motion for summary judgment, the majority opinion focuses on the circuit court's oral statements explaining its reasons for granting summary judgment. However, this Court's review concerns whether the *Board of Adjustment* failed to "pursue[] in a regular manner the authority conferred upon it" or "did some act forbidden by law or neglected to do some act required by law." *See Ehlebracht v. Deuel Cnty. Plan. Comm'n*, 2022 S.D. 18, ¶¶ 12–13, 972 N.W.2d 464, 470 (citations omitted); *Grant Cnty. Concerned Citizens v. Grant Cnty. Bd. of Adjustment*, 2015 S.D. 54, ¶ 41, 866 N.W.2d 149, 163 (noting that both the circuit court and this Court review whether the *board* regularly pursued its authority). We therefore must review *the Board's decision* that the zoning administrator correctly determined that "this ordinance" refers "to the enactment of the ordinances generally, which

occurred prior to the time the subject parcels of land were platted."[8]  Notably, the Board specifically rejected Stockwell's argument that the phrase "this ordinance" means the 2014 revised ordinance

[¶39.]     I disagree with the majority opinion's determination that the County's argument that the 1989 definition applies is not supportable because "the 2014 ordinance definition is precise—a lot of record is a lot that is recorded prior to the *effective date of this ordinance*."  The source of this "precise" definition, according to the majority opinion, is a single notation on the first page of the 2014 revised ordinance identifying the effective date of the revised ordinance as October 29, 2014.  Relying on this single effective date statement, the majority opinion reasons that "'the effective date of this ordinance' [in the definition of lot of record] *can only* mean the effective date of the then-enacted iteration—in this instance, the 2014 ordinance" and "[t]here is *no way* to read this effective date to relate to another, earlier version of the McCook County zoning ordinance."  (Emphasis added.)  I disagree and therefore respectfully dissent for the following reasons.

---

8.     Even if the circuit court's analysis had any bearing on this Court's review, I disagree with the majority opinion's characterization of the circuit court's ruling; in particular, the statement that "the circuit court decided that the 2014 ordinance's definition applied and that Stockwell's lots were lots of record."  While the court said that Stockwell's lots are "lots of record now by what the ordinance says[,]" the court also said: "but these lots have never been entitled to more than one building eligibility."  To be entitled to a "building eligibility," Chapter 3.01 (governing the agricultural district) requires that a lot be a qualifying "lot of record."  Thus, when the court said that Stockwell's "lots have never been entitled to more than one building eligibility," the court necessarily concluded that the 2014 revised ordinance definition *did not apply* to Stockwell's lots.  In fact, the court stated that Stockwell's "interpretation is contrary to the overall scope and intent of the zoning ordinances as a whole."

[¶40.] First, there is nothing about the effective date notation on the first page of the 2014 revised ordinance evincing the County's intent that "this ordinance" in the definition of lot of record means the 2014 revised ordinance. Rather, the effective date statement ("Effective Date: October 29, 2014 (20 days after 2nd publication date)") is just that—an indication of the date on which the 2014 revised ordinance goes into effect. *See* SDCL 9-19-13 (providing in part that "every resolution or ordinance passed by the governing body shall take effect *on the twentieth day after its publication* unless suspended by operation of a referendum" (emphasis added)).

[¶41.] Second, in concluding, based on the October 29, 2014 effective date notation, that the County intended the phrase "this ordinance" in the general definition of lot of record to mean the 2014 revised ordinance, the majority opinion violates the fundamental rule of interpretation that we read provisions "in their context and with the view to their place in the overall statutory scheme."[9] *U.S.*

---

9. The majority opinion quotes language from *Zoss v. Shaefers* for the proposition that ambiguity is required before this Court can "look to 'the legislative history, title, and the total content of the legislation[.]'" 1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552. While ambiguity is required to look at legislative history, *see In re Petition of Famous Brands*, 347 N.W.2d 882, 885 (S.D. 1984), there need not be ambiguity before a court can discern intent by looking at the total content of the legislation and the particular enactment in context. Notably, the Court in *Zoss* cited *LaBore v. Muth* as authority for the phrase the majority opinion quotes, but in *LaBore*, the Court looked at legislative history despite finding no ambiguity. 473 N.W.2d 485 (S.D. 1991). In any event, *Zoss* does not override the well-established principle that because "statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject." *U.S. Bank Nat'l Assoc.*, 2022 S.D. 59, ¶ 38, 980 N.W.2d at 945 (quoting *Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.*, 2014 S.D. 64, ¶ 28, 853 N.W.2d 878, 885).

*Bank Nat'l Assoc. v. S.D. Dep't of Rev.*, 2022 S.D. 59, ¶ 35, 980 N.W.2d 936, 944 (quoting *In re Hunt Cos., Inc.*, 2019 S.D. 26, ¶ 24, 927 N.W.2d 894, 900). The requirement that we read enactments as a whole applies with equal force to the interpretation of ordinances adopted as part of a comprehensive plan. *See City of Rapid City v. Estes*, 2011 S.D. 75, ¶ 12, 805 N.W.2d 714, 718–19 (reading all the ordinances together to determine the City's intent); *City of Marion v. Schoenwald*, 2001 S.D. 95, ¶ 12, 631 N.W.2d 213, 218 (reading comprehensive ordinances as a whole). This Court has also stated that when determining the intent of a law, we must refrain from reading words or phrases in isolation. *Klein v. Sanford USD Med. Ctr.*, 2015 S.D. 95, ¶ 13, 872 N.W.2d 802, 806 (noting that we do not read words or phrases in isolation); *Expungement of Oliver*, 2012 S.D. 9, ¶ 9, 810 N.W.2d at 352 (noting that "[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme'" (citation omitted)); *City of Rapid City v. Anderson*, 2000 S.D. 77, ¶ 20, 612 N.W.2d 289, 295.

[¶42.] Applying our well-settled rules of interpretation here, it is evident that the phrase "the effective date of this ordinance" in the definition of lot of record does not perforce mean the effective date of the 2014 revised ordinance. On the contrary, while the first page contains the effective date statement relied on by the majority opinion, the first page also states that the 2014 revised ordinance "adopts the revised zoning regulations" contained therein and only "repeals any other ordinance or parts thereof in conflict with" the 2014 revised ordinance. Further, the 2014 revised ordinance specifically identifies "the McCook County Comprehensive Plan"

and provides that "[t]hese regulations are designed to carry out the goals, objectives, and policies of the Comprehensive Plan." Finally, Chapter 1.04 provides that "where these regulations and other regulations . . . conflict or overlap whichever imposes the more stringent restrictions shall prevail[,]" and "[a]ll other regulations inconsistent with these regulations are hereby repealed to the extent of inconsistency only." Thus, the meaning of "this ordinance" depends on the provisions contained in the County's prior ordinance enactments.

[¶43.] Looking then to the County's Comprehensive Zoning Plan enacted in 1989,[10] the County defined "lot of record" as:

> A lot which is part of a subdivision, the plat of which has been recorded in the Office of the Register of Deeds of McCook County, South Dakota; or a parcel of land, the deed of which was recorded in the Office of the Register of Deeds of McCook County, South Dakota, *prior to the adoption of these regulations.*

(Emphasis added.) The County adopted revised ordinances in 1998 and 1999; however, those revised ordinances similarly defined "lot of record" to mean "[a] lot or parcel of land" platted with the County "*prior to the adoption of these regulations.*" (Emphasis added.) In its 2001 revised ordinance, the County defined "lot of record" as:

> A lot of record is a lot which is part of a subdivision or a certified survey map which has been recorded in the office of the County Register of Deeds, or a parcel of land, the deed to which was recorded in the office of said Register of Deeds *prior to the effective date of this ordinance.*

---

10. According to the County, it first enacted its comprehensive zoning plan in 1979, although identified as taking effect in 1981. However, this ordinance was repealed in its entirety, and a new comprehensive plan was adopted in 1989. Thus, the County's Comprehensive Zoning Plan is the 1989 ordinance.

(Emphasis added.) The 2002, 2007, and 2014 revised ordinances contain the same "lot of record" definition, referring to the "effective date of this ordinance."

[¶44.] Although the 1989 through 1999 definitions use the phrase "these regulations" and the 2001 definition first used the phrase "this ordinance," it appears from the 1989 ordinance and subsequent revised ordinances, including the 2014 revised ordinance, that words "ordinance" and "regulation" are used interchangeably. More importantly, however, there is no language in the 2001 revised ordinance to support that the change in phrasing to "this ordinance" meant the County intended to repeal the prior meaning of lot of record or to create a new (and always changing) effective date for determining whether a particular lot is a of lot of record. There is also nothing in the 2002, 2007, or 2014 revised ordinances indicating that the continued use of "this ordinance" in the definition of lot of record means something other than that intended by the County's Comprehensive Zoning Plan adopted in 1989.

[¶45.] We often state that our preeminent goal when interpreting text is discerning intent. Adhering to this, it is important to consider the definition of "lot of record" within the context of the County's Comprehensive Zoning Plan as a whole. Tellingly, the County's stated purpose in the 2001, 2002, 2007, and 2014 revised ordinances for land in "the agricultural district is to provide for a vigorous agricultural industry by preserving for agricultural production those agricultural lands beyond areas of planned development." And consistent with this goal, the County has, through its revised ordinances, enacted more restrictive regulations

over the years, specifically minimizing the number of residential dwellings allowed in its agriculturally zoned land.[11]

[¶46.]     The majority opinion seems to acknowledge that its interpretation that "this ordinance" means the then-enacted iteration is contrary to the County's intent, noting that "[i]t may be exceptional within the agriculturally zoned area" to allow Stockwell individual building eligibilities.  The majority opinion nevertheless dismisses the incongruity because, in its view, such an interpretation is not absurd, and if the County intended something different, then the Board of Adjustment can amend or repeal its zoning ordinance to clarify its intent.  But the County's intent is evident when the definition of "lot of record" is read in context and in light of the 2014 revised ordinances as a whole—"the effective date of this ordinance" is referring to the County's Comprehensive Zoning Plan enacted in 1989.

[¶47.]     Because it is apparent from an application of our well-settled rules of interpreting text that the Board of Adjustment properly concluded that the phrase "effective date of this ordinance" in the definition of "lot of record" means the 1989 ordinance, I would affirm the circuit court's order granting the County summary judgment.

[¶48.]     KERN, Justice, joins this writing.

---

11.    For example, in the 1998 revised ordinance, the County increased the number of acres needed to qualify for a building eligibility in the agricultural district from 1 acre to 20 acres, and then in 2007, the County further restricted the eligibility from 20 acres to 40 acres.