#30339-r-MES
**2024 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MROSE DEVELOPMENT CO., LLC and
JASON SCHUMACHER,                                Petitioners and Appellees,

v.

TURNER COUNTY BOARD OF
COUNTY COMMISSIONERS,                      Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DAVID KNOFF
Judge

* * * *

RONALD A. PARSONS, JR. of
Johnson, Janklow & Abdallah, LLP
Sioux Falls, South Dakota

KATELYNN B. HOFFMAN of
Tuner County State's Attorney
Parker, South Dakota                                Attorneys for respondent and
                                                                 appellant.

ANDREW S. HURD
SHAWN M. NICHOLS of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls, South Dakota                         Attorneys for petitioners and
                                                                 appellees.

* * * *

ARGUED
MARCH 19, 2024
OPINION FILED **05/22/24**

#30339

SALTER, Justice

[¶1.]		MRose seeks to develop Turner County farmland located along Swan Lake into 15 lakefront lots. The land for the proposed development is currently included in an agricultural zoning district. Because of residential density restrictions, MRose applied to rezone the land into a lake residential district. The Turner County Board of County Commissioners (the County) voted to deny the application, and MRose appealed to the circuit court, which reversed the County's decision. The court interpreted Turner County's zoning ordinance to require approval of the rezoning application as a purely ministerial act because the land was situated along Swan Lake. The County appeals, and we reverse.

## Factual and Procedural Background

[¶2.]		Christe Stewart lives in Sioux Falls but owns 145 acres of family farmland located on the west side of Swan Lake in Turner County. Stewart inherited the land from her parents and indicates that she wants to develop it into residential lots, in part, so that she and her two sons can build homes along the lake. Stewart and real estate agent Jason Schumacher formed MRose Development, Co., LLC, to develop a portion of her land into 15 lakefront lots.

[¶3.]		But Stewart's land is currently included in the "A-1 Agricultural District" under Turner County's 2008 Revised Zoning Ordinance (2008 Zoning Ordinance). Article 3 of the 2008 Zoning Ordinance governs the Agricultural District and includes residential density requirements to preserve the agricultural nature of the district. Single-family dwellings are permitted uses within the Agricultural District, but only one building eligibility is allowed per 40 acres with

-1-

the additional requirement that each single-family dwelling must be on at least a 2.5-acre lot.

[¶4.] In order to avoid these restrictions and begin constructing its 15-lot residential development, MRose submitted an application to rezone Stewart's land to the Turner County Planning and Zoning Commission.[1] The application sought to redesignate the land and include it in the "Lake Residential District," which, according to the 2008 Zoning Ordinance, exists "to provide for orderly residential development around lakes." The parties agree that rezoning the land, if permitted, would allow MRose's planned development as a permitted use.

[¶5.] The Turner County Planning and Zoning Commission considered MRose's rezoning application at a public hearing and recommended approval to the Turner County Board of County Commissioners. A proposed ordinance that would have rezoned Stewart's land to Lake Residential received a first and second reading at regular meetings of the county commission in June 2022. Following public comment, the motion to pass the rezoning ordinance failed to carry by a vote of 2-2 with one of the commissioners absent.

[¶6.] The 2-2 vote effectively denied MRose's rezoning application, but the County decided to reconsider it with all five commissioners present at its June 28,

---

1. The procedure for rezoning land set out in Article 21 of the 2008 Zoning Ordinance is virtually identical to the statutory method described in our statutes. *See* SDCL 11-2-28.1 to -31 (describing the procedure for changing county zoning designation). In essence, applications are submitted to a county planning commission and, after notice to neighboring landowners, the planning commission holds a public hearing and then makes a recommendation to the board of county commissioners, which also holds a public hearing and votes to either grant or deny the application.

2022, meeting. Although there is no transcript or further record of the discussion, the parties agree that MRose's rezoning application and the related proposed ordinance produced strong public opposition, principally from current Swan Lake residents. Ultimately, the minutes reveal only that the "motion failed." The parties agree that two commissioners voted to approve the ordinance, and three opposed it.

[¶7.]        MRose appealed to the circuit court using the review procedures set out in SDCL Chapter 7-8. The record reveals considerable imprecision about the correct standard for the circuit court's review of the County's decision. The parties at several points described the County's decision as a quasi-judicial one and suggested the court could effectively retry the rezoning matter "de novo," meaning without any deference. *See* SDCL 7-8-30 ("Each cause shall be heard and determined de novo, except any appeal relating to a conditional use permit determination."). However, the parties and the court also noted at other points that the court should review the County's decision deferentially under an arbitrariness standard, which is appropriate where a county commission's decision reflects its legislative or administrative—but not quasi-judicial—authority. *See infra* ¶ 32.

[¶8.]        In any event, the circuit court agreed that MRose could present evidence as part of its appeal, much of which appeared to be directed toward a de novo retrial on the merits of the County's decision—i.e., whether the elected commissioners' decision was a good one. For instance, MRose's first witness was its majority owner, Jason Schumacher, who testified that he had carefully planned the proposed development and did "[e]verything to a T." He explained that MRose had hired a civil engineer and contacted state agencies regarding any impact the

development would have on local wildlife and conservation efforts. Schumacher testified that he had also consulted the 2008 Zoning Ordinance while creating the subdivision's Master Declaration of Covenants and Restrictions, which, he explained, went "above and beyond" what the 2008 Zoning Ordinance required for property in the Lake Residential District.

[¶9.] Schumacher also testified about what occurred at the commission meetings. In particular, he testified that he never received an explanation for the "no" votes, despite asking for one. Instead, he was told that "we don't have to provide that."

[¶10.] On cross-examination, Schumacher acknowledged that the subdivision proposal was met with substantial opposition from current Swan Lake residents. He recalled fielding questions at a local informational meeting and stated, "I had, like, 60 people standing in the front yard rapid-firing me." Specifically, Schumacher explained that "they don't want any more neighbors," "they don't want . . . outside people coming in," they do not "want us to ruin their sunset."

[¶11.] However, Swan Lake resident Doug Berens favored MRose's proposed development and testified before the circuit court. He acknowledged that his support was influenced by the fact that he also owned an undeveloped parcel of land along the lake's west bank whose value could increase if residential development was permitted.

[¶12.] Berens also testified about an exchange he had with one of the county commissioners who had voted against the rezoning ordinance. Commissioner Tony Ciampa is a plumber and was performing some work for Berens when Berens asked

Ciampa about his vote. The conversation occurred after the tie vote but prior to the final vote, and Berens testified that Ciampa explained his vote by referring to the wishes of Stewart's deceased father who, Ciampa claimed, "really didn't want it developed back" when he was living.

[¶13.] This testimony was the subject of a hearsay objection by the County. The circuit court initially sustained the objection but allowed Berens' testimony as an offer of proof. MRose referenced the arbitrary standard and argued that Berens' testimony concerned the arbitrary nature of Ciampa's vote. The court stated that it would later "determine whether I'm going to consider it" under the hearsay exclusion that allows a statement made by an opposing party when made by an individual in a representative capacity. *See* SDCL 19-19-801(d)(2).

[¶14.] MRose called Stewart as the third and final witness at the circuit court's evidentiary hearing. Stewart explained she had inherited the land from her parents and remained actively involved with it. Though she lives in Sioux Falls, Stewart testified that she has close and continuing connections to Turner County and the community of Hurley, which is located near Swan Lake. Even with the subdivision, Stewart explained that some of the land would still be available to farm. Stewart expressed her desire to build her retirement home along Swan Lake and create a place for her children and grandchildren to visit and enjoy. In Stewart's view, the County's decision was simply "not fair" because it was her "God-given right and constitutional right" to develop her land as she intended.

[¶15.] Stewart admitted that even with its Agricultural District zoning, her land qualified for four building eligibilities—enough for she and her husband, one

for each of her two sons, plus one additional eligibility. But Stewart explained that without the revenue that the subdivision would generate, she could not afford to install the water, sewer, and road infrastructure necessary to develop the land.

[¶16.]      At the close of testimony, the circuit court engaged counsel with questions concerning their legal positions. MRose argued that, in its view, the 2008 Zoning Ordinance "already contemplate[s] that this would be a use permitted on the lake[,]" and so the County did not have any discretion to deny the rezoning application. The County, however, claimed that MRose was "skipping a step" that required the County to exercise its independent authority to evaluate the rezoning application and vote on the related ordinance.

[¶17.]      Despite several references to the trial de novo standard, the circuit court asked the County how the court was to determine whether the County acted arbitrarily without a transcript or explanation for the County's decision. In response, the County admitted there was "a lack of record" but noted that it has "historically" not recorded or transcribed its meetings and that "[t]he minutes met the minimum requirements." In the County's view, it fulfilled its statutory obligation by providing the record that it did have, although it was modest and lacked a verbatim transcript. The County argued MRose had the burden to prove arbitrariness and could have used discovery tools to gather that evidence.

[¶18.]      And although it had referred to the arbitrariness standard at earlier points, MRose suggested that the County was incorrectly arguing that MRose had to overcome a "higher standard" that presumed the County's decision was correct, rather than a de novo standard, which contemplates no deference to the County's

decision. The circuit court took the matter under advisement and requested additional briefing from the parties for further clarification, in part, on the impact that the lack of a record had on the court's decision.

[¶19.] The unsettled nature of exactly how the circuit court should view the County's decision—as a quasi-judicial act or as a *non*-quasi-judicial one—was ultimately not consequential to the court's decision. In a February 9, 2023, oral ruling, the court reversed the County's decision to deny MRose's rezoning application based solely upon its interpretation of the 2008 Zoning Ordinance. In the court's view, the 2008 Zoning Ordinance required the County to transfer Stewart's property to the Lake Residential District because the property was located along Swan Lake. The court concluded that the County lacked any discretion to deny the application because MRose's proposed subdivision was a permitted use under Article 6 of the 2008 Zoning Ordinance, which states the Lake Residential District "shall be permitted to be used" for residential development.

[¶20.] The circuit court's subsequent findings and conclusions were, accordingly, oriented to its legal interpretation of the 2008 Zoning Ordinance and not to an arbitrariness standard or its own de novo factual findings about the merits of MRose's proposed development. The court also did not rule on the admissibility of Berens' hearsay statement relating to Ciampa's vote.

[¶21.] The County appeals, raising three issues, restated as follows:

> 1. Whether the circuit court erred when it interpreted the 2008 Zoning Ordinance to mandate that the County grant MRose's rezoning application.

2. Whether the County's decision was quasi-judicial or, rather, a non-quasi-judicial one that implicated the County's administrative or legislative authority.

3. Whether the County's decision to deny MRose's rezoning application was arbitrary.

**Analysis and Decision**

*Interpretation of the 2008 Zoning Ordinance*

[¶22.] Because the circuit court's judgment rested on its interpretation of the 2008 Zoning Ordinance, we begin our review there. The interpretation of an ordinance "is a legal question we review de novo." *Stockwell v. McCook Cnty. Bd. of Comm'rs*, 2024 S.D. 2, ¶ 15, 2 N.W.3d 236, 240; *see also Croell Redi-Mix, Inc. v. Pennington Cnty. Bd. of Comm'rs*, 2017 S.D. 87, ¶ 26, 905 N.W.2d 344, 351 (concluding there was "no reason" to apply an arbitrariness standard to a county commission's decision because the circuit court's decision was "premised on the court's erroneous interpretation of the controlling ordinance").[2]

[¶23.] "Zoning ordinances are interpreted according to the rules of statutory construction[.]" *Stockwell*, 2024 S.D. 2, ¶ 21, 2 N.W.3d at 241 (citation omitted). Therefore, we "necessarily begin[ ] with an analysis of the . . . text." *In re*

---

2. To perhaps clarify, the de novo standard courts use to review questions of law relating to the interpretation of text is not the same as *trial de novo* procedure referenced in some administrative appeal statutes and discussed in our cases. *See infra* ¶¶ 31–37. The former contemplates no deference to a trial court or administrative body's legal interpretation of statutes or ordinances. But, where it is authorized under our decisions, the trial de novo procedure allows a trial court to broadly reconsider the propriety of an administrative decision in its entirety, including rehearing the subject of the decision with the presentation of evidence. The fact that the distinct de novo standard and the trial de novo procedure sound so similar may account for some of the imprecision associated with "de novo" references before the circuit court.

*Implicated Individual*, 2021 S.D. 61, ¶ 16, 966 N.W.2d 578, 583. "If this inquiry reveals language that 'is clear, certain and unambiguous, our only function is to declare the meaning of the ordinance as expressed.'" *Stockwell*, 2024 S.D. 2, ¶ 21, 2 N.W.3d at 241 (quoting *City of Sioux Falls v. Strizheus*, 2022 S.D. 81, ¶ 19, 984 N.W.2d 119, 124).

[¶24.]    The County argues the circuit court erroneously interpreted the 2008 Zoning Ordinance to require approval of MRose's rezoning application. At oral argument, MRose conceded that the court erroneously interpreted the 2008 Zoning Ordinance. We agree and hold that the court erred when it held the text of the 2008 Zoning Ordinance required the County to approve the rezoning application.

[¶25.]    The circuit court's oral ruling appears to be based on the legal conclusion that Stewart's property either is, or should be, zoned in the Lake Residential District simply because it is located on Swan Lake. Using this premise, the court moved directly to the Lake Residential District provisions set out in Article 6 of the 2008 Zoning Ordinance which, the court declared, clearly and unambiguously authorized MRose's proposed development.

[¶26.]    However, no provision in the entire 2008 Zoning Ordinance states that lakefront property must be zoned Lake Residential simply by virtue of its location. And here, it is undisputed that Stewart's land is included in the *Agricultural District*, not the Lake Residential District. This is, of course, what prompted MRose's rezoning application.

[¶27.]    Indeed, the circuit court's contrary view is irreconcilable with the express provisions of the 2008 Zoning Ordinance. Article 2 of the 2008 Zoning

Ordinance makes clear that land in Turner County is divided among ten zoning districts, only one of which (not implicated here) can overlay another district. In other words, a parcel of land can belong to only one district. The court erred because it determined that Stewart's land is already effectively within the Lake Residential District simply because it is situated on Swan Lake. Doing so overlooked the significance of the land's current zoning status in the Agricultural District and discounted the significance of the County's consideration of the proposed rezoning ordinance that would have granted MRose's application.

[¶28.] This is true even though the circuit court appeared to contemplate this sort of decision-making authority at the evidentiary hearing. Many of the court's questions to counsel following the presentation of evidence concerned the impact of Turner County's Comprehensive Development Plan, though the court's oral ruling did not mention it. Nevertheless, the comprehensive plan is included in the record and seems to *support* the idea that rezoning Stewart's land and including it within the Lake Residential District was not a foregone conclusion.

[¶29.] For instance, the comprehensive plan specifically mentions Swan Lake and states that "[i]t is vital that Turner County *carefully review* development proposals in the Swan Lake area to preserve the Swan Lake environment." (Emphasis added.) The comprehensive plan also states that "the county must strive to protect the integrity of its agricultural resources[,]" noting "the importance of agricultural land and the adverse impacts resulting from over development of the rural area."

[¶30.]     Because the circuit court failed to correctly interpret and apply the plain and unambiguous language of the 2008 Zoning Ordinance's text, it erred when it concluded the 2008 Zoning Ordinance required the County to approve MRose's rezoning application.

### The nature of the County's decision under Troy Township

[¶31.]     As indicated above, the provisions of SDCL 7-8-30 state that appeals from county commission decisions "shall be heard and determined de novo[.]" Ordinarily, we would simply apply a plain statutory command like this one without the need for further interpretation. However, our decisions identify a constitutional restriction upon our authority to do so. *See Dep't of Game, Fish & Parks v. Troy Twp.*, 2017 S.D. 50, ¶ 20, 900 N.W.2d 840, 849.

[¶32.]     Citing our own precedent as well as decisional law from the United States Supreme Court, we held in *Troy Township* that the separation of powers doctrine prevented a trial de novo following the decisions of three township boards that were exercising administrative or legislative authority:

> Under the separation-of-powers doctrine, a court may not exercise or participate in the exercise of functions which are essentially legislative or administrative. Therefore, executive or administrative duties of a nonjudicial nature may not be imposed on judges, either directly or by appeal. The purpose of this limitation is to help ensure the independence of the Judicial Branch and to prevent the Judiciary from encroaching into areas reserved for the other branches.

2017 S.D. 50, ¶ 14, 900 N.W.2d at 846 (cleaned up); *see also Croell Redi-Mix*, 2017 S.D. 87, ¶ 26 n.5, 905 N.W.2d at 351 n.5 (applying *Troy Township* to county commission appeals). Instead, when a board exercises administrative or legislative authority, the party challenging the board's decision must prove the decision was

arbitrary—a standard that allows local boards and commissions considerable deference when acting in a policy-making role. *Troy Twp.*, 2017 S.D. 50, ¶ 24, 900 N.W.2d at 850–51.

[¶33.]    In the County's view, its decision to deny MRose's rezoning application by rejecting the rezoning ordinance was legislative and not quasi-judicial, and therefore, the court should have reviewed the County's decision under an arbitrary standard. At oral argument, MRose conceded the County's act was not quasi-judicial in nature. We agree.

[¶34.]    "Whether an action is quasi-judicial is a fact-based inquiry undertaken on a case-by-case basis." *Carmody v. Lake Cnty. Bd. of Comm'rs*, 2020 S.D. 3, ¶ 17, 938 N.W.2d 433, 438. A quasi-judicial act is one that "investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist[,]" one "that could have been determined as an original action in the circuit court." *Troy Twp.*, 2017 S.D. 50, ¶ 21, 900 N.W.2d at 849 (cleaned up). In other words, quasi-judicial acts are those that comport with "the ordinary business of courts[.]" *Id.* ¶ 21, 900 N.W.2d at 849 (citation omitted). Non-quasi-judicial acts, however, "look[ ] to the future and chang[e] existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power." *Id.* Non-quasi-judicial acts consider the public interest and do not adjudicate individuals' existing rights. *Carmody*, 2020 S.D. 3, ¶ 16, 938 N.W.2d at 438.

[¶35.]    We clarified the difference between quasi-judicial and non-quasi-judicial acts in *Troy Township*, where we held the decisions of three townships' to vacate portions of a highway were not quasi-judicial acts. 2017 S.D. 50, ¶ 22, 900

N.W.2d at 849–50. We noted that the townships' decisions were expressions of policy that considered the public interest. *Id.*; *see also Surat v. Am. Twp.*, 2017 S.D. 69, ¶ 12, 904 N.W.2d 61, 66 (holding the decision to designate a road as minimum maintenance was one of policy). The decisions, rendered by individual boards of supervisors, did not involve adjudicating existing rights of landowners, and therefore, the "circuit court could not have been asked in the first instance to determine whether the highway segments at issue should be vacated[.]" *Troy Twp.*, 2017 S.D. 50, ¶ 22, 900 N.W.2d at 850. *Compare Surat Farms, LLC v. Brule Cnty. Bd. of Comm'rs*, 2017 S.D. 52, ¶ 11, 901 N.W.2d 365, 369 (holding the adjudication of rights between two landowners in a land-drainage dispute was quasi-judicial).

[¶36.] Applying these rules, we hold that the County acted in a legislative or administrative capacity when it denied the rezoning ordinance. MRose was not seeking an adjudication of its existing rights but, rather, it sought to *change* the land's zoning district. As a result of the commissioners' 2-3 vote, the rezoning ordinance was not approved, and the status of Stewart's land simply remained the same. And although the land is private property, the zoning of land implicates the public's interest in land use. Land development in Turner County is a policy decision for the County, and reviewing the wisdom of the decision in a trial de novo is not consistent with the "ordinary business of courts."

***Arbitrariness of the County's decision***

[¶37.] We have held that "[t]he arbitrariness standard of review is narrow, and under that standard, 'a court is not to substitute its judgment for that of the agency.'" *Troy Twp.*, 2017 S.D. 50, ¶ 33, 900 N.W.2d at 852–53 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43,

103 S. Ct. 2856, 2866, 77 L. Ed. 2d 443 (1983)). A decision is arbitrary if it is "not governed by any fixed rules or standard" but, rather, is "based on personal, selfish, or fraudulent motives[.]" *Id.* ¶ 33, 900 N.W.2d at 853 (citations omitted). When determining whether a board acted arbitrarily, a court asks the following:

> [Whether] the [County] has relied on factors which [the Legislature] has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [County], or is so implausible that it could not be ascribed to a difference in view or the product of . . . expertise.

*Id.* (third and fifth alterations in original).

[¶38.]        We presume a board is objective and acts fairly. *Id.* ¶ 38, 900 N.W.2d at 854. Therefore, the party asserting a claim against the board has the burden of proving it acted in an arbitrary manner. *Id.* ¶ 24, 900 N.W.2d at 850–51; *McLaen v. White Twp.*, 2022 S.D. 26, ¶ 46, 974 N.W.2d 714, 728. Other courts have described this as a "heavy burden." *See, e.g.*, *Cnty. of Will v. Pollution Cntrl. Bd.*, 135 N.E.3d 49, 60 (Ill. 2019).

[¶39.]        MRose offers two theories upon which it contends the County acted arbitrarily. First, it points to Berens' testimony that Ciampa had told him that he voted to deny the proposed rezoning ordinance because Ciampa knew Stewart's deceased father opposed the development of his property when he was living. MRose's second theory seems to relate to the absence of a transcript from the County meetings and the lack of an explanation for the vote. The County argues MRose failed to meet its burden of proof under either of these theories.

[¶40.]        We agree that MRose failed to meet its burden of proof that the County acted arbitrarily. The only evidence presented by MRose that arguably pertained to

the issue of arbitrariness was Berens' testimony about Ciampa's vote. All the other evidence related to MRose's actions rather than the County's decision. What MRose did or did not do in preparation for developing a subdivision may support its view that approving the rezoning ordinance would have been a better decision because the proposed development would have been a permissible use within the Lake Residential District. However, this evidence has no bearing on whether the County's contrary decision was arbitrary under the standard set out above.

[¶41.] Further, the admissibility of Berens' proffered hearsay testimony about Ciampa's vote against the rezoning ordinance—which was not addressed by the circuit court or presented on appeal—is not outcome determinative here. Even if Berens' testimony regarding Ciampa's statement was admissible and was determined to be evidence of arbitrariness, it would only impact one of the three "no" votes, leaving the vote 2-2 and insufficient to pass the rezoning ordinance.

[¶42.] MRose's second theory does not relate to arbitrariness directly; its argument seeks to excuse meeting the arbitrariness standard by arguing the County failed to produce a verbatim transcript of the June 28 meeting and otherwise explain its decision. However, there is no clear statutory requirement that a county board of commissioners record its meetings, make a verbatim transcript, or provide an explanation for its policy decisions. And we cannot judicially create one.[3]

---

3. We note that the applicable statutes leave some uncertainty as to the necessity and the responsibility for a transcript relating to a challenged board of county commissioners' decision. The provisions of SDCL 7-8-29 state that "the county auditor shall upon the filing of the required bond and the

(continued . . .)

#30339

[¶43.]		Therefore, verbatim transcript or not, it was MRose's burden, as the challenging party, to produce sufficient evidence to establish arbitrariness. It had the opportunity to do so before the circuit court at the evidentiary hearing, but, as we noted, its evidence was almost exclusively oriented to proving the advisability of rezoning, not that the County's decision was arbitrary. Because we cannot substitute our judgment for the County's, MRose faced the challenge of proving that the County's decision was "based on personal, selfish, or fraudulent motives[.]" *Troy Twp.*, 2017 S.D. 50, ¶ 33, 900 N.W.2d at 852–53 (citations omitted). MRose's evidence was simply wide of this mark, and there is no reason for a remand. Doing so would effectively provide MRose with a "second" appeal to which it is not entitled. *See State v. Mollman*, 2003 S.D. 150, ¶ 12, 674 N.W.2d 22, 27 (holding that the defendant, who had the burden of proof on the applicable issue, could not have a second "bite at the apple" when he had been given the opportunity to present his evidence and failed to meet his burden).

### Conclusion

[¶44.]		The circuit court erred when it reversed the County's denial of MRose's rezoning application based on an erroneous interpretation of the 2008 Zoning Ordinance. Because the County exercised its *non*-quasi-judicial policy-making authority when it denied MRose's rezoning application, the court should have

---

(. . . continued)
> payment of his fees . . . *make out a complete transcript* of the proceedings of the board relating to the matter of its decision and deliver the same to the clerk of courts." (Emphasis added.) However, SDCL 7-8-30 states that "[a]n appeal and transcript, *if a transcript exists*, shall be filed by the auditor as soon as practicable . . . ." (Emphasis added.)

reviewed the County's decision under the arbitrariness standard and concluded that MRose failed to meet its burden. We reverse.

[¶45.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.